Georgiana TOY, Appellant

v.

**METROPOLITAN LIFE INSURANCE COMPANY and Bob Martini, Appellees.**

Superior Court of Pennsylvania.

Argued June 22, 2004.
Filed Oct. 20, 2004.
Reargument Denied Jan. 3, 2005.

**4**

Kenneth R. Behrend, Pittsburgh, for appellant.

Penelope M. Taylor, Newark, NJ, for appellees.

Before: DEL SOLE, P.J., JOYCE and CAVANAUGH *, JJ.

JOYCE, J.:

¶ 1 Appellant, Georgiana Toy, appeals from the December 8, 2003 order entered in the Court of Common Pleas of Allegheny County which denied her motion for partial summary judgment, granted the motion for summary judgment filed by Appellees, Metropolitan Life Insurance Company and Bob Martini, and dismissed Appellant's complaint with prejudice. For the following reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this memorandum. The relevant facts, viewed in the light most favorable to Appellant, are as follows.

¶ 2 In January of 1992, Bob Martini, a sales representative of Metropolitan Life Insurance Company ("Met Life"), contacted Appellant's husband to inquire whether he would have any interest in investing in a retirement plan. Appellant's husband expressed that he did not have any personal interest but told Martini that Appellant wanted to start a retirement plan. On February 1, 1992, Martini met with Appellant, and Appellant explained her financial situation to Martini. Appellant stated that, on the date of the meeting, she was forty-two years of age, was employed as a nurse, and possessed $25,000 in life insurance through her employer, Armstrong County Memorial Hospital. Appellant also told Martini that this $25,000.00 life insurance policy was sufficient to meet her needs and that she only wished to invest in a retirement plan. After learning about Appellant's financial situation, Martini informed Appellant that Met Life offered a "50/50 Savings Plan" that would fulfill her needs. Martini explained that, if Appellant paid a monthly deposit of $50 until the age of sixty-five, she would accumulate in

---

* Judge Cavanaugh did not participate in this decision.

excess of $100,000. Throughout their discussions, Martini consistently characterized this plan as a retirement plan and characterized Appellant's monthly payments as "deposits".

¶ 3 After hearing about the plan, Appellant agreed to participate in the "50/50 Savings Plan", and Martini asked her to sign an application. Martini then presented Appellant with a document entitled "Application for Life Insurance", which made no mention of a retirement plan and asked the applicant to provide information about her lifestyle and medical history. Although Appellant signed the document and provided Martini with the necessary information, Appellant contended that she never read the document's contents. Before Martini departed the meeting, he indicated that, as an added benefit, Appellant would also receive life insurance from Met Life.

¶ 4 In February of 1992, Appellant made her first $50 payment and received a copy of a "Whole Life Policy" from Met Life in the mail. Appellant testified that she recognized the document to be a life insurance policy but did not read the policy. Appellant indicated that she simply placed the document in her files. In May of 1994, Appellant received a class action notice indicating that Met Life had engaged in a scheme to market life insurance policies to consumers as retirement plans. Upon receipt of this notice, Appellant ceased her monthly payments.

¶ 5 Appellant initiated the instant action by filing a writ of summons on November 1, 1995. Appellant filed a complaint against Martini and Met Life on February 6, 1996 and an amended complaint on March 3, 1999. In this amended complaint, Appellant raised four claims against Martini and Met Life: Count I raised common law fraud and deceit claims based on Martini and Met Life's misrepresentation

of the nature of the product; Count II raised negligence claims based upon Martini and Met Life's failure to furnish information concerning the actual nature of the product; Count III raised a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") based upon Martini and Met Life's misrepresentations of the nature of the product; and Count IV raised a violation of the UTPCPL based upon fraudulent misrepresentations. Appellant also raised two claims against Met Life alone. Count V raised a negligent supervision claim, and Count VI sounded in bad faith. In this complaint, Appellant also averred that Martini and Met Life's actions harmed her because the scheme permitted them to collect a much higher commission from her monthly payments than a retirement plan would have permitted and because Appellant lost nearly two years in which she could have invested in another retirement plan. On April 19, 1999, Martini and Met Life filed an answer.

¶ 6 On May 23, 2003, Appellant filed a motion for partial summary judgment against Martini and Met Life. In this motion, Appellant argued that a 1994 administrative decision issued by the Pennsylvania Insurance Department collaterally estopped Martini and Met Life from refuting their liability on Counts III, IV and VI. In addition, Martini and Met Life filed a motion for summary judgment against Appellant in which it asserted that Counts I, II and V of the amended complaint are barred by the statute of limitations. *See* 42 Pa.C.S.A. § 5524. Additionally, Martini and Met Life asserted that Appellant had failed to establish Appellant's justifiable reliance on Martini's misrepresentations to establish a claim under the UTPCPL (Counts III and IV) or a bad faith claim (Count VI). On December 8, 2003, the trial court denied Appellant's motion for

partial summary judgment, granted Martini and Met Life's motion for summary judgment in its entirety, and dismissed the amended complaint with prejudice against Martini and Met Life. Appellant filed this timely appeal.

¶ 7 In her brief, Appellant raises the following issues for our review:

1. Did the trial court err in granting summary judgment when it found as a matter of law that the relevant time of reliance is at the time of delivery of a life insurance policy and not at the time of sale when initial payment is made by [Appellant]?

2. Did the trial court err in granting summary judgment where disputed material facts exist?

3. Did the trial court below err in holding all of [Appellant's] claims to be time-barred?

4. In granting summary judgment, did the trial court err in concluding as a matter of law that a "justifiable" reliance standard applies to Unfair Trade Practices and Consumer Protection Law Claims §§ 201–2(4)(ii), (v) and (vii) rather than an "ordinary" reliance standard?

5. Did the trial court err in finding Appellant cannot rely on parol evidence where fraudulent misrepresentations are asserted that induced the formation of the insurance policy?

6. Did the trial court err in denying [Appellant's] Motion for Partial Summary Judgment and not affording issue preclusion based upon the findings made by the Pennsylvania Department of Insurance in the Market Conduct Examination Report of Metropolitan Life Insurance Company, Issued on February 11, 1994, wherein an identical unfair and deceptive business practice as found in the Market Conduct Examination was used in the sale to [Appellant]?

Appellant's Brief, at 2.

¶ 8 When reviewing the trial court's entry of an order granting or denying summary judgment, we employ the following standard of review:

In examining this matter, as with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free from doubt. Our scope of review is plenary.

*Keystone Aerial Surveys, Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 777 A.2d 84, 89 (Pa.Super.2001) (quotations omitted).

**I. Appellant's Appeal from the Trial Court's Decision to Grant Martini and Met Life's Motion for Summary Judgment.**

¶ 9 In her first five issues, Appellant contends that the trial court abused its discretion when it granted Martini and Met Life's motion for summary judgment on each of Appellant's claims. For ease of discussion, we will discuss the propriety of the trial court's decision to dismiss each claim separately.

## A. Fraud (Count I).

¶ 10 Appellant contends that the trial court erred when it determined, as a matter of law, that Appellant failed to initiate her fraud claim within the applicable two-year statute of limitations. Appellant's Brief, at 25. While Appellant concedes that she purchased the insurance policy in February of 1992 and that she initiated the instant suit in November of 1995, Appellant maintains that she did not discover Met Life's deceptive practices until she received notice of a class action suit against Met Life in May of 1994. *Id.* Appellant further maintains that the trial court should have permitted a jury to consider whether Martini and Met Life's actions barred her from discovering the existence of an injury prior to her receipt of a class action notice in the mail. *Id.*

¶ 11 An action to recover damages for injury to person or property which sounds in fraud is governed by a two-year statute of limitations. *See* 42 Pa.C.S.A. § 5524(7). Typically, the two-year period begins to run as soon as the right to institute and maintain a suit arises. *See Crouse v. Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606, 611 (2000). "However, in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of due diligence, reasonably discover that he has been injured." *Id.* In these cases, the discovery rule applies. *Id.* Pursuant to the discovery rule, the statute of limitations is tolled until the plaintiff knows, or in the exercise of reasonable diligence should have known, that he/she has been injured and that her injury was caused by another's conduct. *Id.*

¶ 12 In examining whether a plaintiff has exercised due diligence, we are mindful of the following:

Reasonable diligence is . . . a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case. This Court has long held that there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. That is what is meant by reasonable diligence. Although reasonable diligence is an objective rather than a subjective standard, it is sufficiently flexible . . . to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question. A plaintiff's actions must be evaluated, therefore, to determine whether he exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. In other words, a party is not under an absolute duty to discover the cause of his injury. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.

*Crouse*, 560 Pa. at 403, 745 A.2d at 611 (internal quotations and citations omitted). When a plaintiff seeks to benefit from the discovery rule, he/she has the burden of establishing his/her inability to know of the injury despite the exercise of due diligence. *Dalrymple v. Brown*, 549 Pa. 217, 224, 701 A.2d 164, 167 (1997).

¶ 13 Where the issue in a case involves a factual determination of what constitutes a reasonable time for the plaintiff to discover his/her injury and its cause, this issue is usually for the jury. *See Cochran v. GAF Corp.*, 542 Pa. 210, 215, 666 A.2d 245, 248 (1995). However, where the facts are so clear that reasonable

minds could not differ, the commencement period may be determined as a matter of law. *Id.*

¶ 14 In the instant case, the trial court determined that Appellant's right to institute a suit arose in February/March 1992 when Appellant received a copy of her life insurance policy in the mail and did not return the policy to Met Life or Martini within the following ten days.[1] We would agree. Prior to the expiration of this ten-day period, Appellant possessed the ability to void the contract and to obtain a full refund. Upon the expiration of this period, however, Appellant lost the ability to reconsider and, as a result, sustained injury.

¶ 15 While Appellant would concede that her right to institute a suit arose in February/March 1992, she maintains that the trial court erred when it determined that Appellant should have discovered the existence of an injury when she did not receive any documentation about the "50/50 Savings Plan" with a copy of the life insurance policy. Appellant contends her receipt of the life insurance policy did not alert her to any deception because Martini advised her that life insurance was an added benefit of her decision to invest in the "50/50 Savings Plan". Appellant argues that it was not unreasonable for her to continue to believe that she had invested in a separate retirement plan and would receive additional documentation for this plan at a future date.

¶ 16 Even were we to concede that Appellant could reasonably expect to obtain information about her retirement plan on a future date, Appellant cannot establish that she would benefit from the discovery rule when she awaited the receipt of this information for twenty months.[2] Appellant testified that she did not recall ever receiving any information or accounting statements pertaining to the "50/50 Savings Plan".[3] She also testified that she **never** contacted Martini or made any inquiries about her retirement plan. For Appellant to obtain any benefit from the discovery rule, we would have to conclude that Appellant employed reasonable diligence in awaiting the receipt of **any** information on the retirement plan from February/March 1992 until November of 1993. As Appellant recognized that she did not receive any information on her retirement plan and testified that she expected to receive information on it at future date, we cannot conclude that Appellant employed "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others" when she failed to take any action or make any inquiries within the following twenty months. *Crouse,* 560 Pa. at 405, 745 A.2d at 611. Nor can we conclude that reasonable minds would differ in this con-

1. Our review of the policy's cover page reveals the following language:
   **10–Day Right to Examine Policy**—Please read this policy. You may return the policy to Metropolitan or to the sales representative through whom you bought it within 10 days from the date you receive it. If you return it within the 10–day period, the policy will be void from the beginning. We will refund any premium paid.

2. We consider the twenty-month period between February/March 1992 and November 1993 critical because Appellant initiated the instant action in November of 1995. If Appellant could have discovered the existence of her injury through the exercise of due diligence prior to November of 1993 and if reasonable minds could not differ on this point, her fraud claim is time barred.

3. While Appellant did testify that she received a $50 monthly bill from Met Life, Appellant testified that she could not recall any of the language on the bill.

clusion. As Appellant has failed to demonstrate her due diligence, we do not find that the trial court erred when it determined, as a matter of law, that the statute of limitations barred Appellant's fraud claim.

### B. Negligent Misrepresentation (Count II).

¶ 17 Our review of the record reveals that the trial court dismissed Appellant's negligent misrepresentation claim since Appellant could not demonstrate that she brought the claim within the two year statute of limitations. *See* Trial Court Opinion, at 39–42; 42 Pa.C.S.A. § 5524(7) (an action to recover damages for injury to person or property which sounds in negligence is governed by a two-year statute of limitations). For the aforementioned reasons, we do not find that the trial court abused its discretion when it dismissed Appellant's negligent misrepresentation claim on statute of limitations grounds.

### C. Violations of the UTPCPL (Counts III and IV).

¶ 18 In her brief, Appellant contends that the trial court also abused its discretion when it determined that she had failed to establish violations of Sections 201–2(4)(ii), (v) and (vii) of the UTPCPL. Appellant's Brief, at 28. In its opinion, the trial court explained that it dismissed the UTPCPL claims because Appellant failed to demonstrate that she justifiably relied upon any of Martini and Met Life's alleged misrepresentations. *See* Trial Court Opinion, 12/8/03, at 43. Appellant contends, however, that she need only demonstrate ordinary reliance, not justifiable reliance, to present a viable cause of action under the aforementioned subsections of the UTPCPL. Appellant's Brief, at 28. In the alternative, Appellant contends that the trial court abused its discretion when it

concluded, as a matter of law, that Appellant failed to establish the element of justifiable reliance. Appellant's Brief, at 15.

¶ 19 The Courts of this Commonwealth have consistently held that, to establish a private right of action under the UTPCPL, a plaintiff must demonstrate that he/she detrimentally relied upon the deceptive practice of the defendant and that the plaintiff suffered harm as a result of this reliance. *See Weinberg v. Sun Co.,* 565 Pa. 612, 618, 777 A.2d 442, 446 (2001); *Debbs v. Chrysler Corp.,* 810 A.2d 137, 156–57 (Pa.Super.2002); *Sexton v. PNC Bank,* 792 A.2d 602, 607 (Pa.Super.2002); *DiLucido v. Terminix International, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237, 1241 (1996). Nevertheless, Appellant argues that the level of reliance that a plaintiff must demonstrate (ordinary or justifiable) depends upon the specific violations of the UTPCPL alleged in the complaint. Appellant cites our Court's decision in *DiLucido, supra* as support for the proposition that a plaintiff need not establish justifiable reliance to sustain a private cause of action under Sections 201–2(4)(ii), (v) and (vii) of the UTPCPL.

¶ 20 In *DiLucido,* our Court addressed the issue of whether the trial court properly denied the plaintiffs' request for class certification. The *DiLucido* plaintiffs alleged that Terminix had engaged in a campaign of false advertising and claimed violations of Sections 201–2(4)(ii), (v), (vii), (xvi) and (xvii) of the UTPCPL. In considering the plaintiffs' request for class certification, the trial court determined that a plaintiff must establish all of the elements of a common law fraud claim to plead a viable cause of action under the UTPCPL. The trial court then denied the plaintiffs' request because the class representatives could not establish that they justifiably relied upon any specific misrepresentation in the advertisements.

¶ 21 On appeal, our Court affirmed the trial court's decision to deny class certification, albeit on a different basis. Our Court specifically rejected the trial court's conclusion that a plaintiff must establish the elements of common law fraud to demonstrate every violation of the UTPCPL. We explained that the UTPCPL encompasses "an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract and breach of warranty." *Id.* at 1240. Additionally, our Court concluded that the violations detailed in Sections 201–2(4)(ii), (v) and (xvi) did not constitute claims of fraud.

¶ 22 Nevertheless, we agreed with the trial court's determination that a plaintiff must demonstrate reliance and resulting injury to establish a private cause of action under any of the UTPCPL's sections. Specifically, we stated that plaintiffs retain "the burden of establishing a causal connection to or reliance on the alleged misrepresentations" of the defendant. *Id.* at 1241, citing 73 P.S. § 201–9.2. Since the class representatives could not demonstrate that they relied upon the alleged misrepresentations, we affirmed the order of the trial court.

¶ 23 Since the *DiLucido* court specifically determined that violations under Sections 201–2(4)(ii) and (v) do not sound in fraud and that a plaintiff need not prove every element of a common law fraud claim to present a viable private action under these sections, Appellant contends that she need only demonstrate ordinary reliance, not the justifiable reliance standard accompanying a common law fraud action. Upon our review, however, we find that our Supreme Court's decision in *Weinberg* essentially refutes Appellant's position.

¶ 24 In *Weinberg, supra,* the plaintiffs sought to certify a class action based upon Sun Company's allegedly false misrepresentations in their advertisements. Specifically, the plaintiffs alleged violations of Sections (v), (vii), (ix) and (xvii) of the UTPCPL. The trial court denied the plaintiffs request to certify the class upon its determination that some members of the class could not demonstrate detrimental reliance on the advertisements.

¶ 25 On appeal, our Court rejected the trial court's determination that every violation under the UTPCPL requires a plaintiff to demonstrate reliance. In so doing, we interpreted *DiLucido* to provide that those individuals alleging fraud-based claims under the UTPCPL had an obligation to demonstrate reliance, while those individuals alleging other claims need only demonstrate some causal connection between the misrepresentation and the harm. As two of the plaintiffs' alleged violations ((v) and (ix)) were in the nature of false advertising, not fraud, we held that they had no obligation to demonstrate the common law element of reliance.

¶ 26 On appeal, our Supreme Court reversed. While not expressly rejecting *DiLucido*'s characterization of fraud and non-fraud violations under the UTPCPL, the Court held:

> [t]he UTPCPL's "underlying foundation is fraud prevention." *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812, 816 (1974). Nothing in the legislative history suggests that the legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation.

*Weinberg,* 565 Pa. at 618, 777 A.2d at 446. In so stating, the Supreme Court determined that the plaintiffs had an obligation to establish the common law element of

reliance even when asserting false advertising violations under Sections (v) and (ix).

¶ 27 Upon our review of the Supreme Court's decision in *Weinberg*, we must conclude that every plaintiff asserting a private cause of action under the UTPCPL must demonstrate his/her justifiable reliance on the misrepresentation or wrongful conduct. As the decision in *Weinberg* emphasized that the UTPCPL was designed to prevent fraud and that the legislature did not intend to remove the common law elements of reliance and causation that attend a fraud action, plaintiffs must demonstrate the level of reliance that accompanies a common law fraud claim. *See Bortz v. Noon*, 556 Pa. 489, 499, 729 A.2d 555, 560–61 (1999) (stating that a plaintiff's justifiable reliance on a defendant's misrepresentation is an element of a common law fraud claim).

¶ 28 As further support for this conclusion, we direct Appellant to our Supreme Court's recent decision in *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 2004 WL 1618851 (2004). In that case, the plaintiffs asserted that, *inter alia*, the defendant violated Sections (vii), (ix), (x), (xi) and (xvii) of the UTPCPL based upon misrepresentations made to plaintiffs in a "stadium builder licenses" brochure. The trial court dismissed the plaintiffs UTPCPL claims on the basis that the plaintiffs could not demonstrate their justifiable reliance on the misrepresentations. The Commonwealth Court reversed the trial court, and our Supreme Court granted the defendant's petition for allowance of appeal. On appeal, our Supreme Court cited its decision in *Weinberg* for the proposition that "a plaintiff must show that he justifiably relied upon the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance" to bring a private cause of action under the UTPCPL. *Yocca, supra* at *9, 578 Pa. at 501, 854 A.2d at 438. Upon its determination that the individual plaintiffs could not establish justifiable reliance, our Supreme Court reversed the decision of the Commonwealth Court. In view of our Supreme Court's conclusions in *Yocca* and *Weinberg*, we cannot find that the trial court erred when it concluded that Appellant must establish her justifiable reliance in order to establish a private cause of action under the UTPCPL.

¶ 29 Upon our determination that Appellant had an obligation to demonstrate the common law element of justifiable reliance under the UTPCPL, we must next consider whether the trial court committed an abuse of discretion or error of law when it determined that Appellant failed to establish this element. Appellant's Brief, at 17.

¶ 30 In determining whether a plaintiff has sufficiently demonstrated the element of justifiable reliance, we are mindful of the following principles:

> It is the fundamental principal of the law of fraud, regardless of the form of the relief sought, that in order to secure redress, the representee must have relied upon the statement or representation as an inducement to his action or injurious change of position. The recipient of a fraudulent transaction can recover against its maker … if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable.
>
> . . .
>
> Whether the party claiming to have been defrauded relied upon the false representation is a question of fact.
>
> . . .
>
> The rules for determining whether a person's reliance upon a fraudulent misrepresentation are [sic] justifiable have been set forth in sections 540 and 541 of

the Restatement (Second) of Torts. Those rules provide as follows:

### § 540   Duty to Investigate

The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.

### § 541   Representation Known to Be or Obviously False

The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.

Thus, although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. The right to rely upon a representation is generally held to be a question of fact.

*Silverman v. Bell Savings & Loan Assoc.,* 367 Pa.Super. 464, 533 A.2d 110, 114–15 (1987), *appeal denied,* 518 Pa. 642, 542 A.2d 1371 (1988). Furthermore, "neither a court nor a jury can consider the issue [of justifiable reliance] without considering the relationship of the parties involved and the nature of the transaction." *Rempel v. Nationwide Life Ins. Co.,* 471 Pa. 404, 409, 370 A.2d 366, 368 (1977).

¶ 31 In the instant case, the trial court determined that Appellant could not demonstrate that she justifiably relied upon the oral representations of Martini once she received a copy of the life insurance policy in the mail and did not receive any information about her principal purchase, the "50/50 Savings Plan". The trial court concluded that a cursory examination of the cover page of the policy should have alerted Appellant to a discrepancy or potential discrepancy between Martini's oral representations and the actual substance of her purchase.

¶ 32 We cannot agree with the trial court that Appellant's failure to conduct a cursory examination of the information contained upon the cover page of the life insurance policy prevents her from demonstrating her justifiable reliance on Martini's oral representations. In *Rempel, supra,* our Supreme Court considered whether an insured's failure to read a policy prohibited the insured from claiming that he justifiably relied upon the representations of his agent. In that case, an insurance agent informed an elderly insured that insured's life insurance policy would generate a lump sum benefit of $16,000, when in fact the policy only provided a benefit of $10,400. Our Supreme Court concluded that the insured would not be barred from asserting that he justifiably relied upon the insurance agent's misrepresentations about the coverage afforded under the policy even though the insured admitted that he failed to read the language of the policy. In so stating, the Court recognized that consumers tend to view insurance agents as individuals possessing expertise in a complicated subject. It also concluded that, in view of the trust placed in insurance agents, it is not "unreasonable for consumers to rely upon the representations of the expert rather than on the contents of the insurance policy itself" or to "pass" when the time comes to read the policy. *Id.* at 409–10, 370 A.2d at 366–9. Ultimately, our Supreme Court held that policyholders have no duty to read the policy, and may rely upon the oral representations of the insurer, unless un-

der the circumstances it is unreasonable for them not to read the policy. *Id.* at 411, 370 A.2d at 369.

¶ 33 Furthermore, in *Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131 (Pa.Super.2003), our Court determined that an insured had no obligation to read the policy to discover an agent's misrepresentation on the extent of the coverage, where the insured asked for particular coverage and the agent informed the insured that the policy would provide it. Therein, the insured asked the agent to amend her automobile insurance policy to add her mother. The agent agreed but failed to do so. After the insured's mother was killed in an automobile accident, the insurer denied coverage. On appeal, our Court affirmed the trial court's declaration that the insured's mother was an insured under the policy. We stated that "normal contract principles are no longer applicable in insurance transactions" because insurance contracts are not freely negotiated and an insured must place a certain amount of trust in its agent. *Id.* at 1140. Even though we recognized that the insured in *Pressley* did not read the policy, we found that the insurer had a duty to advise an insured that it has issued a policy that differs from what the insured requested. Where the insurer failed to so advise, we determined that the insured had no obligation to read the policy to discover the misrepresentations and that the reasonable expectations of the insured should prevail.

¶ 34 As the aforementioned cases demonstrate, Martini possessed a duty to inform Appellant that he sold her something different from what he purported to sell her. Martini told Appellant that she had invested in a "50/50 Savings Plan" with the added benefit of life insurance when, in reality, Appellant had only purchased a life insurance policy. Because Martini had an obligation to inform Appellant of this change, we cannot find that Appellant's failure to review all of the language on the cover page prohibits her from demonstrating that she justifiably relied upon Martini's oral representations.

¶ 35 Nor can we agree with the trial court that Appellant cannot demonstrate, as a matter of law, that she justifiably relied upon Martini's oral representations because she did not receive any information on her principal purchase, the "50/50 Savings Plan", with the life insurance policy. Appellant's receipt of the policy alone did not make the falsity of Martini's oral representations patent or obvious to her. Appellant testified that she did not become alarmed when she only received the life insurance because Martini informed her that she would receive life insurance as an added benefit of her decision to invest in the retirement plan. Due to the complicated nature of insurance transactions and the inherent trust placed in one's agent, *see Rempel, supra*; Pressley, supra, we cannot conclude that Appellant's beliefs were so unreasonable that she could not demonstrate her justifiable reliance as a matter of law. Accordingly, we reverse that portion of the trial court's order that granted Martini and Met Life's motion for summary judgment on the UTPCPL claims.[4]

4. The trial court also dismisses Appellant's claim on the basis of the parol evidence rule. *See* Trial Court Opinion, at 42. We cannot agree. In *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa.Super.2002), our Court explained that "parol evidence of representations is inadmissible as to a matter covered by a written agreement with an integration clause unless the parties agreed that those representations would be added to the written agreement but they were omitted because of fraud, accident or mistake." In the instant case, Martini allegedly represented to Appellant that she had enrolled in Met Life's "50/50

### D. Negligent Supervision (Count V).

¶ 36 In its opinion, the trial court dismissed Appellant's negligent supervision claim because Appellant failed to raise the claim within the two-year statute of limitations. *See* Trial Court Opinion, at 43. As discussed *supra*, we do not find that the trial court abused its discretion when it dismissed this claim on this basis.

### E. Bad Faith (Count VI).

¶ 37 In her complaint, Appellant asserted that Met Life engaged in bad faith when it devised the aforementioned scheme to market its life insurance policies as retirement plans. Specifically, Appellant maintained that Met Life's bad faith conduct violated 42 Pa.C.S.A. § 8371, the implied covenant of good faith and fair dealing between insurers and insureds, and specific provisions of the Unfair Insurance Practices Act. The trial court dismissed this count of the complaint on the basis that Appellant must establish the element of justifiable reliance to maintain a bad faith claim.

¶ 38 Upon review, we affirm the decision of the trial court, albeit on a different basis. *See Boyer v. Walker,* 714 A.2d 458, 463 n. 10 (Pa.Super.1998) (stating that we may affirm the trial court's decision on any ground regardless of the reasons relied upon by the trial court). Foremost, our Supreme Court has held that a private cause of action in tort does not lie under the Unfair Insurance Practices Act. *See D'Ambrosio v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 494 Pa. 501, 507, 431 A.2d 966, 970 (1981) (refusing to judicially create a cause of action for bad faith as a result of violations of the Unfair Insurance Practices Act). Further, our

Court has not recognized a private cause of action, in tort, for alleged breaches of the duty of good faith and fair dealing. *See Heritage Surveyors & Engineers, Inc. v. National Penn Bank,* 801 A.2d 1248, 1253 (Pa.Super.2002) (stating that "where a duty of good faith arises, it arises under the law of contracts, not under the law of torts"). Finally, Appellant has failed to establish the requisite elements for a bad faith claim under Section 8371, namely, "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." *Booze v. Allstate Ins. Co.,* 750 A.2d 877, 880 (Pa.Super.2000), *appeal denied,* 564 Pa. 722, 766 A.2d 1242 (2000) (finding that an insured had an obligation to plead the aforementioned elements, and failed to do so, when she alleged solely in the complaint that the insurer mislead her into purchasing particular coverage). As Appellant cannot pursue a bad faith claim under any of these theories, we affirm the trial court's decision to enter summary judgment on this count of the complaint.

## II. Appellant's Appeal from the Denial of Her Partial Motion for Summary Judgment

¶ 39 In her final issue, Appellant contends that the trial court erred when it denied her partial motion for summary judgment against Martini and Met Life. Appellant's Brief, at 37. Specifically, Appellant argues that an administrative report of the Pennsylvania Insurance Department, which concluded that Met Life had employed deceptive sales practices in marketing life insurance policies as retirement plans, should preclude Martini and

---

Savings Plan" and that she would receive the added benefit of a life insurance policy. The only writing embodying their agreement, however, omitted any reference to a retirement plan. In view of Appellant's allegations of fraud, we do not find that the parol evidence applies.

Met Life from challenging their liability on the UTPCPL and bad faith claims.[5] *Id.* Upon review, we cannot agree with Appellant.

¶ 40 In seeking to use a report issued by the Pennsylvania Insurance Department to conclusively establish Martini and Met Life's liability, Appellant has invoked the doctrine of offensive collateral estoppel. Our Supreme Court has characterized this doctrine as follows:

> Collateral estoppel is used offensively when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action against another party. A plea of collateral estoppel is valid if, 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party in privity or in privity with a party to the prior adjudication, 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Shaffer v. Smith,* 543 Pa. 526, 529, 673 A.2d 872, 874 (1996) (internal quotations and citations omitted). Additionally, when a plaintiff seeks to employ the doctrine offensively, courts must also consider whether (1) plaintiff had an opportunity to join the earlier action, (2) the defendant had an incentive to defend the first action vigorously, (3) the judgment relied upon as a basis for collateral estoppel is inconsistent with one or more previous judgments in favor of the defendant, and (4) the second action would afford the defendant procedural opportunities unavailable in the first action that could produce a different result. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 329–331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In considering whether the application of the doctrine of offensive collateral estoppel is warranted, "the general rule should be that in cases where a plaintiff could easily have joined the earlier action or where, either for the [aforementioned] reasons ... or for other reasons, the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of collateral estoppel." *Id.* at 331, 99 S.Ct. 645.

¶ 41 Our review of the Pennsylvania Insurance Department's Market Conduct Report reveals that the Department initiated an investigation of Met Life's marketing techniques after learning that Met Life may have employed strategies to market life insurance policies as retirement plans. During this investigation, the Department reviewed Met Life's forms and advertising, interviewed various consumers about Met Life's marketing techniques, and interviewed those corporate officials at MetLife that had supervisory capacity over the company's marketing and sales operations. At the conclusion of the investigation, the Department found:

> Various marketing plans were developed and/or revised at both corporate and local levels, and were intended for use in soliciting the retirement market. The advertising used promoted retirement plans with heavy emphasis on "savings" and "deposits." The advertising made little or no mention of life insurance, even though the sales objective was to sell life insurance. These marketing plans had the capacity to mislead consumers into purchasing life insurance under the false presumption they were

---

5. In view of our determination that Appellant cannot, as a matter of law, establish the elements of a bad faith claim, we need only review whether an application of the doctrine of collateral estoppel would affect Appellant's UTPCPL claims.

purchasing a retirement plan. It was also noted similar Met Life marketing practices and procedures were utilized in other states for the same purpose. Report of Market Conduct Examination of the Metropolitan Life Insurance Company, Commonwealth of Pennsylvania Insurance Department Market Conduct Division, 2/11/94, at 85.

¶ 42 In determining whether Appellant may successfully invoke the doctrine of offensive collateral estoppel in the instant case, we note the application of this doctrine is not necessarily precluded because Appellant seeks to rely upon an administrative decision. *See Grant v. GAF Corp.,* 415 Pa.Super. 137, 608 A.2d 1047, 1056 (1992); *Frederick v. American Hardware Supply Co.,* 384 Pa.Super. 72, 557 A.2d 779, 780 (1989). Nevertheless, we cannot conclude that Appellant has met her burden to establish the applicability of this doctrine. *See e.g. Harter v. Reliance Ins. Co.,* 386 Pa.Super. 14, 562 A.2d 330 (1989) (placing the burden of establishing the applicability of the collateral estoppel doctrine on the party attempting to invoke it); *Commonwealth v. Buffington,* 574 Pa. 29, 828 A.2d 1024 (2003) (same). Foremost, we cannot agree with Appellant that the invocation of the collateral estoppel doctrine would conclusively determine Martini and Met Life's liability under the UTPCPL. As discussed *supra,* Appellant must also establish the element of justifiable reliance. Of greater concern, however, Appellant does not address whether the burden of proof in an administrative proceeding is identical to the burden of proof in a civil action raising a consumer protection claim. To the extent that an administrative proceeding might place a lesser burden upon the administrative agency than the plaintiff in the instant action, we cannot conclude that the Department's findings are entitled to preclusive effect in the instant case.[6] As Appellant bears the burden of establishing the applicability of an offensive collateral estoppel claim and did not provide this Court with any exposition on this issue, we will not disturb the trial court's decision to deny Appellant's motion for summary judgment.[7]

¶ 43 Order affirmed with respect to Appellant's partial motion for summary judgment and with respect to its dismissal of the fraud, negligent misrepresentation, negligent supervision and bad faith claims. Order reversed with respect to Appellant's UTPCPL claims and remanded for further proceedings. Jurisdiction relinquished.

---

6. We recognize that Met Life had an opportunity to challenge the Department by demanding a hearing but failed to do so. To the extent, however, that the instant proceeding would entitle Met Life to a different procedural opportunity, namely an increased burden of proof, we cannot find Met Life's failure to appeal controlling.

7. Additionally, Appellant fails to acknowledge that administrative agencies and boards need not strictly comply with the rules of evidence, *see A.Y. v. Com., Dept. of Public Welfare, Allegheny Cty. Children & Youth Services,* 537 Pa. 116, 121, 641 A.2d 1148, 1150 (1994), and does not offer any discussion as to whether the breadth of the evidence examined by the Department would be admissible in the instant action.