

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-30-2005

# McKenna v. Metro Life Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2642

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"McKenna v. Metro Life Ins Co" (2005). *2005 Decisions.* Paper 1408.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1408

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2642
_____


PAUL V. McKENNA, JR.

Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY;
ALBERT T. CHURNAY


_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-00077)
District Judge:  The Honorable Donetta W. Ambrose


_____


Submitted Under Third Circuit LAR 34.1(a)
March 7, 2005


Before: NYGAARD, McKEE, and RENDELL, Circuit Judges.


(Filed: March 30, 2005)

_____

OPINION OF THE COURT

_____


NYGAARD, Circuit Judge.

Appellant Paul McKenna appeals the District Court's denial of his Motion for

Reconsideration of the Order granting summary judgment in favor of Metropolitan Life

Insurance Company on his claims arising from two life insurance policies and an annuity.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

I.

McKenna purchased a life insurance policy in 1969, another in 1982, and

purchased an annuity contract in 1983, which are the subject of this lawsuit.  The

application for the 1982 Policy, stated at the top of the form in large bold text

"Application for Life Insurance."  The annual premium set forth on the 1982 Policy

specification page — the first page, excluding the cover — was $615 per year, payable

for 55 years.  The 1982 Policy contained a "10-Day Right to Examine Policy" provision.[1]

It also contained a "Limitation on Sales Representative's Authority," which stated: "No

_____

1.      The provision provides:  "Please read this policy.  You may return the policy to
Metropolitan or to the sales representative through whom you bought it within 10 days
from the date you receive it.  If you return it within the 10-day period, the policy will be
void from the beginning.  We will refund any premium paid."

change in this policy can be made by a sales representative. Any change must be in writing and signed by our President, Vice-President, or the Secretary."[2]

The 1983 Annuity, which named him owner and annuitant, provided in large bold text "Application for Annuity" at the top of the page. McKenna made a single premium payment to MetLife in the amount of $10,000. Like the 1982 Policy, the 1983 Annuity contained a "10-Day Right to Examine Contract" provision on the cover and a limitation of authority provision. The Annuity stated that "interest [is] credited to [plaintiff's] contract at the rate set by [MetLife] from time to time." McKenna also received an annual annuity statement, informing him of the contract's actual performance, which varied from time to time. In addition, McKenna was given an Annuity Illustration stating that "illustrative figures are not guaranteed for the future."

MetLife issued a check in the amount of $7,898.82 payable to McKenna, as full payment for the cash surrender of his 1969 Policy. The check itself has the 1969 Policy number printed on it and directly above the Policy number the phrase "FULL PAYMENT OF POLICY DESCRIBED BELOW." McKenna admits receiving the check and using the money to partially pay for the Annuity. In addition, McKenna admits that he was informed that his 1969 Policy no longer existed when he requested a copy of the 1982 Policy sometime before 1988.

---

2.      A similar limitation of authority is also found in the application.

3

## II.

McKenna filed a Complaint against MetLife and Albert Churnay,[3] asserting causes of action for Negligence (Count I); Common Law Fraud and Deceit (Count II); violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Counts III and IV); Breach of Implied Covenant of Good Faith and Fair Dealing (Count V); Bad Faith (Count VI); Breach of Fiduciary Duty (Count VII); and Negligent Supervision (Count VIII).

MetLife filed a Motion to Strike Certain Allegations and to Dismiss Certain Claims. The District Court granted that motion in part, dismissing Counts V, VI, and VII. McKenna filed a Motion for Reconsideration, which the District Court denied. McKenna has not appealed that decision.

MetLife then filed a Motion for Summary Judgment with respect to the remaining counts on the grounds of statute of limitations, which the District Court granted. McKenna filed another Motion for Reconsideration, which the District Court denied. This appeal followed.

## III.

---

3. McKenna served "Albert Churney, Jr." a retired school teacher, who was never employed by MetLife in any capacity and who has never had any contact with McKenna. MetLife business records indicate that the sales representative who sold McKenna the policy and contract at issue is "Albert F. Chernay" who is a resident of Texas. "Albert F. Chernay" was not served. The District Court properly dismissed the Complaint as to "Albert Churney." McKenna has not appealed the District Court's decision on that issue.

McKenna raises three issues. First, he argues that the District Court improperly

placed an affirmative duty on him to read his policy. Second, he claims that the District

Court erred when holding that the discovery rule did not apply to his case. He argues,

finally, that collateral estoppel precludes MetLife's defenses.

*A. Duty to Read Policy*

McKenna argues that the District Court improperly placed an affirmative duty on

him to read the 1982 Policy, the Annuity, and the check from the cash surrender of the

1969 Policy. We disagree and will discuss each in turn.

McKenna claims that he purchased the 1982 Policy based on MetLife's

misrepresentation that he was purchasing an annuity contract not a life insurance policy

and that the purported "annuity" required premium payments for only seven years. He

argues that the District Court, by ruling that his claims accrued when he received a copy

of the 1982 Policy in 1988,[4] improperly placed an affirmative duty on him to read and

understand the terms of the Policy. The Pennsylvania Supreme Court has stated that "the

policyholder has no duty to read the policy unless under the circumstances it is

*unreasonable* not to read it." *Rempel v. Nationwide Life Ins. Co.*, 370 A.2d 366, 369 (Pa.

1977) (emphasis added). In *Rempel*, nothing on the face of the policy would have alerted

4.      The 1982 Policy was issued on December 6, 1982, but McKenna denies receiving a copy of the policy until three to five years later when he called MetLife. Nevertheless, it is beyond dispute that McKenna has had the 1982 Policy since at least 1988.

the insureds that the policy did not contain the coverage expected. *See Id.* Here, however, it was unreasonable for McKenna not to read the policy.

The face of the 1982 Policy should have alerted McKenna that it required a period of payments longer than seven years, and that the agreement was for life insurance rather than for an annuity. The specification page specifically provides for 55 years of payments. The words "Application for Life Insurance" appear at the top of the cover page in large bold text. The District Court did not improperly place an affirmative duty on McKenna to read the policy. Rather, the District Court thought it was "unreasonable under the circumstances" for McKenna not to read the policy.

Next, McKenna asserts that MetLife misrepresented the future performance of the 1983 Annuity. He relies on Pennsylvania law that an insured has no duty to examine a policy on receipt but only to conduct a "cursory examination." *See Matcon Diamond v. Pennsylvania Nat'l,* 815 A.2d 1109 (Pa. Super. 2003). Even a "cursory review" of the Annuity would have alerted McKenna that the Annuity's future performance would vary. The Annuity contract provides that "interest [is] credited to [plaintiff's] contract at the rate set by [MetLife] from time to time." McKenna also received an annual annuity statement, informing him of the contract's actual performance, which varied from time to time. In addition, McKenna was given an Annuity Illustration stating that "illustrative figures are not guaranteed for the future." Therefore, McKenna's claim regarding the misrepresentation is without merit.

Finally, McKenna asserts that the 1969 Policy was cash surrendered without his knowledge to purchase the 1983 Annuity. MetLife issued a check in the amount of $7,898.82 payable to McKenna, as full payment for the cash surrender of the 1969 Policy. The check itself has the 1969 Policy number printed on it and directly above the policy number the phrase "FULL PAYMENT OF POLICY DESCRIBED BELOW." McKenna admits receiving the check and using the money to partially pay for the Annuity.

"Under Pennsylvania insurance law, if the language of an insurance policy is clear and unambiguous, an insured does not have a colorable claim against an insurer in the event of a coverage dispute on the basis that he did not read or understand the policy." *Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192, 194 (3d Cir. 1992) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 567 (Pa. 1983)). "Moreover, in the absence of proof of fraud, failure to read the contract is an unavailing excuse or defense and cannot justify an avoidance, modification, or nullification of the contract or any provision thereof." *Lazovick v. Sun Life Ins. Co.*, 586 F.Supp. 918, 922 (E.D. Pa. 1984) (internal quotations omitted).[5] Because the check is clear and unambiguous and there is no proof of fraud, McKenna may not rely on the excuse of failure to read the contract.

*B. Discovery Rule*

---

5.      Citing *In re Olson's Estate*, 291 A.2d 95, 98 (Pa. 1972) (quoting *Orner v. T.W. Phillips Gas & Oil Co.*, 163 A.2d 880, 883 (Pa. 1960)).

McKenna also argues that the District Court erred by determining that the discovery rule exception did not apply to his case. We do not agree.

Generally, a party asserting a cause of action is under a duty to use all reasonable diligence to be informed of the facts and circumstances on which his claims would be based, and to institute suit within the prescribed statutory period. *See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). "[L]ack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Id.* The discovery rule "arises from the inability, despite the exercise of diligence, to determine the injury or its cause, not upon a retrospective view of whether the facts were actually ascertained within the period." *Id.* at 471– 472. McKenna, as the plaintiff seeking to benefit from the discovery rule, has the burden of establishing his inability to know of the injury despite the exercise of due diligence. *See Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 7 (Pa. Super. 2004) (citing *Dalrymple v. Brown*, 701 A.2d 164, 167 (Pa. 1997)).

McKenna claims that he did not receive the 1982 Policy at or around the time the Policy was issued. Even assuming his claim is accurate, he admits that he received a copy of the 1982 Policy on or before 1988 from MetLife. We agree with the District Court that McKenna was "clearly put on notice, had he exercised reasonable diligence, of all his claims during the 1980's, and at no time later than 1988 . . . [and] [a]ccordingly, even the

8

six year statute of limitations[6] had long run by the time that this lawsuit was filed in 1999." (App. at 1579a). Therefore, McKenna is not entitled to the protections of the discovery rule for the claims regarding the purchase of the 1982 Policy.

Nor are McKenna's claims, involving the purchase of the 1983 Annuity and the cash surrender of the 1969 Policy, subject to tolling by the discovery rule. McKenna did not exercise diligence to determine the alleged misrepresentation regarding the purchase of the 1983 Annuity and the cash surrender of the 1969 Policy. The facts indicate that even a "cursory review" of the Annuity would have alerted McKenna that the Annuity's future performance would vary. With respect to the cashing in of the 1969 Policy, the check issued to McKenna for $7,898.82 indicated that it was in full payment for the 1969 Policy.

McKenna was put on notice. Had he exercised reasonable diligence, he would have known that all of these claims regarding the 1983 Annuity purchase and cash surrender of the 1969 Policy began to run in 1983. Therefore, the discovery rule exception does not apply. Since, the statute of limitations started to run in 1983, these claims are untimely.

---

6.      The applicable statute of limitations period for a claim under Pennsylvania's UTPCPL is six years. *Gabriel v. O'Hara*, 534 A.23d 488, 494–95 (Pa. Super. 1987) (applying Pennsylvania's "most analogous" rule to locate limitations period for UTPCPL claim would result in inconsistent rulings, therefore "catchall" six-year period applies). The District Court held that the Ocel's UTPCPL claims are not barred by the statute of limitations.

*C. Collateral Estoppel*

McKenna argues that the decisions in *Toy v. MetLife et al.*, 863 A.2d 1 (Pa. Super. 2004) and *In re General American Life Insurance*, 391 F.3d 907 (8th Cir. 2004) should be afforded "full faith and credit" through collateral estoppel to preclude MetLife's defenses. For collateral estoppel to be afforded the following four factors must be met in Pennsylvania:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action;
>
> (2)  there was a final judgment on the merits;
>
> (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and
>
> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357–58 (3d Cir. 1999).  The first factor is dispositive here.

The burden is on the moving party to demonstrate that the "issue actually litigated" in a previous action is identical to the current issue before the court.  *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).  "Identity of the issue is established by showing that the same general rules govern both cases and that the *facts of both cases are indistinguishable* as measured by those rules."  *Suppan,* 203 F.3d at 233 (3d Cir. 2000) (emphasis added).

McKenna failed to meet his burden of establishing that the issues decided in the prior adjudications were identical with the issues presented in this action.  First, unlike

10

this case, the sales representative in *Toy* told appellant that she had invested in a "50/50 Savings Plan" with the added benefit of life insurance when, in reality, appellant had only purchased a life insurance policy. *Toy*, 863 A.2d at 9. Here, McKenna received what the sales representative told him he would receive. Also, the insured in *Toy* ceased her monthly payments upon receipt of a letter informing her of her right to cancel or restore her original policy. McKenna, however, did not take any action until 1999 when filing the complaint. Second, in *General American Life Insurance* the Eighth Circuit stated that "[e]ven if reasonable diligence required plaintiffs to read their entire policies, the policy language is insufficient to show that plaintiffs would have discovered their injuries as a matter of law." *Id*. at 913. Here, however, the cover pages of the 1982 Policy and the 1983 Annuity would have put McKenna on notice of his "injury." The issues decided in these prior adjudications were not identical to the issue here, and therefore collateral estoppel does not bar MetLife from arguing their defenses.

V.

For the foregoing reasons, we affirm the District Court's grant of summary judgment in favor of MetLife.

11