J-A06020-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

EQUESTRIAN ENDEAVORS, LLC      :     IN THE SUPERIOR COURT OF
                                      :           PENNSYLVANIA
                                        :

         v.                            :

DONALD D. TUCCI                 :
                                        :

        Appellant        :      No. 963 WDA 2017

Appeal from the Order June 5, 2017
In the Court of Common Pleas of Erie County Civil Division at No(s):
2016-13001

BEFORE:    BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    FILED MAY 18, 2018

Defendant-Appellant, Donald Tucci ("Tucci"), appeals from the trial court's order entered on June 5, 2017, granting a Motion for Judgment on the Pleadings filed by Plaintiff-Appellee, Equestrian Endeavors, LLC ("EE"), and denying Tucci's Motion to Amend Answer to Assert Counterclaim as moot. We affirm.

Mary Wisniewski ("Wisniewski"), Tucci's former romantic partner, previously sued Tucci in 2013 at Erie County Docket Number 11369-2013 (variously referred to as "Wisniewski" or "Wisniewski Lawsuit"). The trial court summarized the factual and procedural history of the instant case as follows:

> Mary Wisniewski filed suit against [Tucci] to recover funds she had lent him for repairs, improvements and operating expenses for a property located in Spartansburg, Pennsylvania. In November of 2000, . . . Tucci[] purchased the property located

_____
*    Retired Senior Judge assigned to the Superior Court.

at 44362 Highway 77, Spartansburg, PA ("Spartansburg Property") for $154,000. He paid $20,000 in cash and took a loan out for $134,000. . . . Wisniewski began living with Tucci at the Spartansburg property in 2001 and continued to live there until the end of 2006.

In 2006 Wisniewski and Tucci formed [EE], as equal owners, and executed a written Operating Agreement. EE was a premier equestrian facility that accommodated hippotherapy and life skills programs in an indoor arena. EE was not located at Tucci's Spartansburg [P]roperty. Rather, EE was located at a property on Sterrettania Road in Fairview Township, Pennsylvania. From 2006 to 2013, EE paid Tucci for expenses related to his Spartansburg Property. These expenses included mortgage, property insurance, and real estate taxes, which were paid with EE company checks. The EE bank account(s), however, were funded by capital contributions made by Wisniewski. She funded the EE accounts by obtaining cash advances on her personal credit cards and transferring those advances into the EE bank account(s). Tucci was aware of this process. From 2006 to 2012, EE funds totaling $74,665.00 were used for the Spartansburg [P]roperty related expenses. Wisniewski testified that Tucci told her he would pay her back for all her contributions after he sold the Spartansburg [P]roperty.

Tucci allowed Wisniewski to actively advertise the property for sale. On November 8, 2012, Tucci sold the Spartansburg [P]roperty for $365,000. After deductions for his mortgage and other costs, Tucci received proceeds in the amount of $277,056.11 from the sale. Tucci never informed Wisniewski that he sold the property. He used the proceeds to pay off debts unrelated to the Spartansburg [P]roperty or EE.

The [c]ourt concluded, in its Opinion and Order of March 21, 2016 [in the Wisniewski Lawsuit],[1] that "all amounts derived from Wisniewski and used for Spartansburg expenses constituted loans to Tucci that would be repaid after the sale of the Spartansburg [P]roperty." ([Wisniewski Lawsuit], Opinion and Order, 3/21/2016, p.9). This [c]ourt found that Tucci owed

---

[1] The trial judge in the instant case also presided over the Wisniewski Lawsuit.

$74,665.00. (Opinion and Order, p.4, ¶ 26). Specifically, this [c]ourt found as follows:

> 26. For the years 2006 through 2012, EE funds totaling $74,665 were used for Spartansburg [P]roperty related expenses, including insurance, real estate taxes, and mortgage payments.
>
> > a. $10,254 was treated as a loan receivable due from Tucci. This amount represented amounts paid in 2012 by EE for insurance, mortgage payments, and mortgage interest.
> >
> > b. The balance of $64,111 was treated as distributions to Tucci, which represented 25% of Tucci's total distributions taken.

(Id.) This [c]ourt noted in a footnote to paragraph 26(b), that "[t]hese amounts were not deducted as ordinary trade business expenses of EE because the Spartansburg [P]roperty was not affiliated with EE." (Id.) Even though it was clear that Tucci owed the money to Wisniewski, this [c]ourt was constrained to find in the [Wisniewski Lawsuit] that "the amounts due Wisniewski must be sought through dissolution and liquidation of EE, a non-party to the instant Wisniewski action." ([Wisniewski Lawsuit], Opinion and Order, March 21, 2016, p. 9). Furthermore, this [c]ourt concluded that dissolution of EE can only be accomplished, pursuant to the Operating Agreement, by way of written direction by the parties, i.e. Wisniewski and Tucci, or a decree of judicial resolution. Neither party appealed the March 21, 2016, final decision in the prior [Wisniewski Lawsuit], nor did EE seek a judicial resolution dissolving the corporation.

Trial Court Opinion, 8/18/17, at 1–3.

On November 7, 2016, EE filed the instant action against Tucci for breach of oral contract and unjust enrichment, seeking the $74,665 that the court in the Wisniewski Lawsuit had determined Tucci owed EE. On

December 23, 2016, following a default notice, Tucci's prior counsel, John Mizner, Esquire, filed an answer, which lacked any counter-claims.[2]

On January 9, 2017, EE filed a Motion for Judgment on the Pleadings and a brief in support on the basis of collateral estoppel, asserting that the trial court had held in Wisniewski, inter alia, that Tucci owed EE $74,665 for the Spartansburg-property expenses. Tucci failed to file a response to EE's Motion for Judgment on the Pleadings but did file a Motion to Amend Answer to Assert Counterclaim on February 3, 2017. By order filed June 5, 2017, the instant trial court granted EE's Motion for Judgment on the Pleadings and denied, as moot, Tucci's Motion to Amend Answer to Assert Counterclaim. Tucci filed a timely notice of appeal. Both Tucci and the trial court complied with Pa.R.A.P. 1925.

Tucci raises the following issues on appeal:

I. Whether the Trial Court committed an error of law and abused its discretion by applying the doctrine of collateral

_____

[2] Pursuant to Pa.R.C.P. 1026, "Time for Filing", an answer had to be filed within twenty days after Tucci received service of the complaint. Thirty days after service of the complaint, on December 7, 2016, EE sent Tucci notice that Tucci was in default for failure to enter a written appearance and failure to file an answer. The notice stated that an answer must be filed within ten days to avoid a default judgment. Attorney Mizner filed an answer sixteen days later, on December 23, 2016, and at the wrong docket number. EE apparently did not pursue a default judgment pursuant to Pa.R.C.P 1037. Further, although Attorney Mizner incorrectly filed the answer using the Wisniewski docket number, he provided service of the answer to EE and the court. On June 30, 2017, Tucci's new, and current counsel, Rebecca Warren, Esquire, filed a Praecipe to Transfer and File Answer to Correct Case, thus adding the answer to the instant certified record.

estoppel when the issues/claims are not the same, and [Tucci] had defenses to present which could not have been raised and were not raised in the previous lawsuit?

II. Whether [Tucci's] trial attorney's incompetence and ineffective assistance deprived [Tucci] of crucial defense opportunities and denied [Tucci] of his due process rights?

Tucci's Brief at 4.

We examine the requirements of entry of judgment on the pleadings. Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). Moreover,

[a] motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

Rourke v. PA Nat'l Mutual, 116 A.3d 87, 91 (Pa. Super. 2015) (emphasis added). Furthermore, "[w]e will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise." Id. (citing Sw.

Energy Prod. Co. v. Forest Res., LLC, 83 A.3d 177, 185 (Pa. Super. 2013)).

The trial court held that the doctrine of collateral estoppel barred Tucci from re-litigating the question of whether he and Wisniewski had an oral agreement whereby he agreed to repay $74,665 loaned to him by EE. Tucci thus argues that EE, in filing its Motion for Judgment on the Pleadings, and the trial court in granting it, erroneously applied the doctrine of offensive collateral estoppel. Tucci's Brief at 9, 13.

We examine the doctrine of collateral estoppel and its applicability in the present case. This Court has described the policy underlying the doctrine as follows: "to minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the prior adjudication from vexatious litigation." Lebeau v. Lebeau, 393 A.2d 480, 482 (Pa. Super. 1978). Collateral estoppel applies if:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. Collateral estoppel, sometimes referred to as issue preclusion, operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit. Kituskie v. Corbman, 452 Pa. Super. 467, 682 A.2d 378, 382 (1996) (citations and quotation marks omitted). The decision to allow or to deny a

- 6 -

prior judicial determination to collaterally bar relitigation of an issue in a subsequent action historically has been treated as a legal issue. As such, this Court is not bound by the trial court's conclusions of law and we may draw our own conclusions from the facts as established. *Meridian Oil & Gas Enters., Inc. v. Penn Cent. Corp.*, 418 Pa. Super. 231, 614 A.2d 246, 250 (1992), appeal denied, 534 Pa. 649, 627 A.2d 180 (1993).

*Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 304 (Pa. Super. 2017) (quoting *Westfield Ins. Co. v. Astra Foods Inc.*, 134 A.3d 1045, 1049–1050 (Pa. Super. 2016)), appeal denied, 158 A.3d 1226 (Pa. 2016).

Collateral estoppel is used offensively when the "plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979)). Offensive collateral estoppel involves additional considerations:

[W]hen a plaintiff seeks to employ the doctrine offensively, courts must also consider whether (1) plaintiff had an opportunity to join the earlier action, (2) the defendant had an incentive to defend the first action vigorously, (3) the judgment relied upon as a basis for collateral estoppel is inconsistent with one or more previous judgments in favor of the defendant, and (4) the second action would afford the defendant procedural opportunities unavailable in the first action that could produce a different result.

*Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 15 (Pa. Super. 2004) (citing *Parklane Hosiery*, 439 U.S. at 329–331).

The United States Supreme Court has commented on offensive use of collateral estoppel:

> [O]ffensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely "switching adversaries." Thus defensive collateral estoppel gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff [EE herein] will be able to rely on a previous judgment against a defendant [Tucci herein] but will not be bound by that judgment if the defendant [Tucci] wins, the plaintiff [EE] has every incentive to adopt a "wait and see" attitude, in the hope that the first action by another plaintiff [Wisniewski] will result in a favorable judgment. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

> A second argument against offensive use of collateral estoppel is that it may be unfair to a defendant. If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, particularly if future suits are not foreseeable. Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant. Still another situation where it might be unfair to apply offensive estoppel is where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.

> We have concluded that the preferable approach for dealing with these problems . . . is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

Parklane Hosiery, 439 U.S. at 329–331 (footnote omitted).

Tucci argues that two of the requirements of collateral estoppel were not met in this case. First, Tucci maintains that the issue in the Wisniewski Lawsuit was different from the issue herein. Tucci's Brief at 13. He submits that Wisniewski sought to collect on a breach-of-contract claim premised upon an oral agreement between the parties that related to personal loans from Wisniewski to Tucci. Alternately, in the instant action by EE, Tucci avers that the allegations are centered on capital contributions and distributions made to Tucci. Id. at 14. Tucci suggests that while Wisniewski raised similar issues to the claims herein, EE was not a party to Wisniewski. Referring to the notes of testimony from Wisniewski, Tucci points to the trial court's comments relating to the fact that EE was not joined in the prior action and posits that the issues in the two cases are not identical. Id. at 15 (citing N.T., 10/21/15, at 3–6; N.T., 10/22/15, at 87–88).

Tucci also avers that a second factor of collateral estoppel was not met in that he did not have a full and fair opportunity to litigate the identical issues in Wisniewski that are involved herein. Tucci's Brief at 15. Tucci purports to rely upon the Wisniewski court's alleged comments that it "did not have jurisdiction to entertain [EE's] claim," and he maintains that he "believed his exposure in the Wisniewski lawsuit was limited to personal loans which Wisniewski had advanced, and which was approximately $10,000." Id. The notes of testimony do not reflect the comments as

alleged by Tucci. Id. (citing N.T., 10/21/15, at 3–6; N.T., 10/22/15, at 87–88).

Looking to the additional factors necessary to support application of offensive collateral estoppel, Tucci also alleges that EE could have, and should have, been a party in Wisniewski. Tucci's Brief at 16. He suggests that Wisniewski's comments to the Wisniewski court that she could not have included EE as a party because Tucci would not have agreed to sue himself are contradicted by the fact that EE indeed maintained the current action against Tucci, and "nothing changed procedurally." Tucci's Brief at 17. Tucci laments that if EE had been a party to Wisniewski, "this procedural quagmire with which Tucci is faced would have been non-existent." Id. Finally, Tucci suggests that he had a different incentive to defend Wisniewski, where the amount of damages was approximately $10,000, compared to the instant case where the potential damages are significantly greater. Tucci's Brief at 18.

EE responds that collateral estoppel applies to this case and that the two lawsuits do have identity of issues. EE's Brief at 7. EE suggests the trial court received "ample testimony and documentary evidence" demonstrating that Tucci received $74,665 from Wisniewski indirectly. Id. EE avers that the issue in the instant case, whether Tucci owes $74,665 for the Spartansburg-Property expenses, is the identical question addressed in Wisniewski. EE's Brief at 8.

EE also asserts that Tucci had a full and fair opportunity to litigate the instant issue in Wisniewski. Id. at 9. For support, EE relies on the trial court's explanation. Id. (citing Trial Court Opinion, 8/18/17, at 5).

Regarding the propriety of the offensive use of collateral estoppel herein, EE suggests that the first factor, whether EE could have easily joined Wisniewski, is not dispositive. EE's Brief at 10. EE posits that "[a]s a practical matter, when it comes to the $74,000 owed by Tucci, Wisniewski and EE are one and the same." Id. at 11. EE offers that there were two discreet claims in Wisniewski: 1) Wisniewski's claim for reimbursement of improvements she made to the Spartansburg Property, which totaled more than $10,000, and 2) her claim to recoup $74,665 in Spartansburg-Property expenses, which were the amounts Wisniewski deposited into EE accounts that were used to pay the mortgage, taxes, and insurance for the Spartansburg Property. Id. EE maintains that the fact that the money from Wisniewski flowed through the EE account "was not viewed as an obstacle to recovery in" Wisniewski. Id. at 12.

EE acknowledges that in Wisniewski, Tucci raised the issue of whether EE was the proper plaintiff to sue in order to recoup the Spartansburg-Property expenses, but submits Tucci did so on the eve of trial by filing the Motion to Amend New Matter. EE's Brief at 12. EE, like Tucci, refers to the Wisniewski court's responses to Tucci's attempt to identify EE as the proper party to sue and suggests that "faced with the decision to

delay the trial ([which was] less than a week away) to allow for additional pleadings, Wisniewski decided to move forward and present all of her evidence on these issues . . . ." Id. at 14.

EE also maintains that Tucci had incentive to vigorously defend Wisniewski, and indeed, did so. EE's Brief at 15. Responding to Tucci's claim that while he did in fact defend Wisniewski, "his defense was not robust considering the sums," Tucci's Brief at 18, EE suggests that this "claim is completely belied by [Tucci's] actions, the testimony and evidence elicited at the trial and the arguments made by his attorneys." EE's Brief at 16.

We are compelled to address the state of the certified record because its omissions have complicated our review. The instant record lacks the operating agreement regarding EE, the Wisniewski complaint, answer, and new matter, the Wisniewski trial court opinion, and the notes of testimony from Wisniewski. It is well settled that we are bound to review only matters in the certified record before this Court. Warfield v. Warfield, 815 A.2d 1073, 1074 n.1 (Pa. Super. 2003); Pa.R.A.P.1921 (setting forth the composition of the record on appeal); Burlington Coat Factory of Pa., LLC v. Grace Constr. Mgmt. Co., 126 A.3d 1010, 1019 n.9 (Pa. Super. 2015) (en banc) (document that is not part of the trial court record may not be considered on appeal). Any document that is not part of the official certified record "is considered to be non-existent, which deficiency may not be

remedied by [its] inclusion in the reproduced record." Bennyhoff v. Pappert, 790 A.2d 313, 318 (Pa. Super. 2001). "It is the responsibility of the appellant to provide a complete record to the appellate court on appeal . . . ." McNeal v. Eaton Corp., 806 A.2d 899 (Pa. Super. 2002). "Where a review of an appellant's claim may not be made because of such a defect in the record, we may find the issue waived." Eichman v. McKeon, 824 A.2d 305, 316 (Pa. Super. 2003).

As we recently stated, "[W]e lament the state of the record, which has encumbered our consideration of this appeal." Erie Ins. Exch. v. Moore, 175 A.3d 999, 1005 (Pa. Super. 2017). In Erie Ins. Exch., an amended complaint, among other documents, was never made part of the trial court record but was included in the reproduced record on appeal. The Erie Ins. Exch. Court, reiterating that documents "that were never part of the record in the trial court may not be placed in the reproduced record," struck the amended complaint from the reproduced record and ruled that it would not be considered on appeal. Id. at 1004 n.2. The considerations in Erie Ins. Exch. are similar concerns in the instant case:

> We have described the process by which we were required to chase down some of the cited materials in this case to illustrate the difficulties and delays that occur when our rules are not followed. This Court's heavy appellate docket does not afford us the ability to search for missing record items in each of our cases. Compliance with the applicable rules should have obviated the record issues we encountered here. The requirements of our rules are not mere technicalities; their compliance helps to assure our efficient resolution of the matters before us. All parties to an appeal are responsible for assuring

- 13 -

that their case is presented to us in a manner that permits our efficient appellate review. We admonish counsel for the parties—and, particularly, counsel for [Appellant], as it is [Appellant's] materials that are missing here—to take greater care to comply with our rules in the future.

Id. at 1008. Moreover, we emphasized in Parr v. Ford Motor Co., 109 A.3d 682 (Pa. Super. 2014), that "an appellate court is limited to considering only the materials in the certified record when resolving an issue." Id. at 695 n.10; see also Del Ciotto v. Pennsylvania Hospital of the University of Penn Health System, 177 A.3d 335, 344 n.9 (Pa. Super. 2017) (document never made part of trial court record would not be considered on appeal). Further,

[i]n this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record. Commonwealth v. Kennedy, 868 A.2d 582, 593 (Pa. Super. 2005).

Parr, 109 A.3d at 695 n.10 (citing Commonwealth v. Preston, 904 A.2d 1, 6–8 (Pa. Super. 2006 (en banc)). The impact of a deficient record is clear.

On the other hand, in WMI Grp., Inc. v. Fox, 109 A.3d 740, 744 n.5 (Pa. Super. 2015), we noted that while the certified record did not include necessary exhibits, the reproduced record ("R.R.") did include them. We concluded therein that because the exhibits were "part of the reproduced record and neither party ha[d] disputed their accuracy," we would consider

them. We relied upon our Supreme Court's pronouncement "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." Commonwealth v. Brown, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (citing Pa.R.A.P. 1921, note).

Similarly, in Commonwealth v. Barnett, 121 A.3d 534 (Pa. Super. 2015), we noted our disapproval that various transcripts were not contained in the certified record, despite our official attempts to secure them. Id. at 546 n.3. While acknowledging that we generally may consider only facts that have been duly certified in the record, this Court stated, "[W]here the accuracy of a document is undisputed and contained in the reproduced record, we may consider it. Here, the reproduced record contains the relevant transcripts[,] and there is no dispute as to their contents. We therefore considered them in our review." Id. (citing Brown, 52 A.3d at 1145 n.4).

In the instant case, because the reproduced record contains the missing documents from Wisniewski, neither party disputes its contents, and, most importantly, because the trial judge in the present case was the trial judge in the prior case, we have considered the documents contained in the reproduced record in our review.

As noted supra, Tucci challenges only the first and fourth collateral-estoppel factors: whether the issue in both cases was the same, and

whether Tucci had a full and fair opportunity to litigate the issues. Tucci's Brief at 13–16. However, Tucci also maintains that "when one considers the additional four considerations specific to offensive collateral estoppel," EE failed to "meet three of the four requirements." Tucci's Brief at 13.

Tucci claims that the issues in the instant case are not identical to those in Wisniewski because that case focused on the breach of an oral contract, while the current case is "centered on capital contributions and distributions." Tucci's Brief at 14. In support, Tucci cites to Lebeau, 393 A.2d. 480. Relying on Lebeau, Tucci argues that the issue raised by EE herein is merely collateral or incidental, not essential to the Wisniewski litigation. Tucci's Brief at 14. The facts in the instant case, however, are distinguishable from Lebeau, where the previous litigation was over the issuance of a support order, but the subsequent suit involved the partition of marital property. The Lebeau court noted that the issue in the subsequent suit "was never 'actually litigated' in the prior proceeding." Lebeau, 393 A.2d at 483. "No responsive pleadings were filed, no briefs were submitted, no testimony taken, no arguments [were] heard." Id. Such is not the case herein, as revealed by the myriad documents and 346 pages of notes of testimony over a period of two days in the Wisniewski Lawsuit.

Tucci's allegation that the instant action actually concerns capital contributions and distributions also is not supported by the record before us and in fact, is inconsistent with the findings of the trial court. Trial Court

Opinion, 8/18/17 at 5–7.  According to the trial court, the Wisniewski court held that an oral agreement for repayment existed between Tucci and Wisniewski, and it extended both to money Wisniewski directly loaned Tucci and to money Wisniewski deposited into an EE bank account for Tucci's use. Trial Court Opinion, 8/18/17, at 5.  Thus, EE is relying on the holding in Wisniewski to estop Tucci from denying either that 1) he received $74,665 from EE for his Spartansburg property or 2) that he had agreed to repay that sum.  Trial Court Opinion, 8/18/17, at 5.  In finding the issues identical, the trial court noted that the Wisniewski court determined that Tucci indeed had promised to repay Wisniewski when he sold the Spartansburg property. Moreover, the trial court reiterated that the Wisniewski court found that Tucci owed $74,665 for monies he received from Wisniewski, which she provided through the EE bank accounts.  Id.  Thus, the issue in both cases is whether Tucci promised to repay the funds provided by Wisniewski.

Tucci additionally underscores that during Wisniewski, "the trial judge informed counsel at the commencement of the bench trial that the LLC was not a party to the action, and he did not consider himself to have authority to address any claims relating to the LLC."  Tucci's Brief at 14 (citing R.R. at 37–40, 362–363).  While there was an initial discussion among the parties and the court regarding the fact that EE was not a party, a matter we address infra, the court's comments do not support Tucci's

- 17 -

claim that the issues in the two cases are not identical. As stated by the trial court:

> Here, the issues presented are identical to the questions in the prior action. Namely, we inquired into whether Tucci promised to reimburse Wisniewski for the amounts she loaned to him for the taxes, insurance and mortgage payments on his Spartansburg [P]roperty. We also inquired into the amounts Wisniewski took as advances from her credit cards and placed into the EE bank account for Tucci's use. We determined that Tucci had, indeed, promised to pay Wisniewski back when he sold the property. And we determined that Tucci owed $74,665 for monies he received from Wisniewski which she paid through the EE bank accounts.

Trial Court Opinion, 8/18/17, at 5. We agree, and the record reflects the trial court's statements.

Tucci also avers that he did not have a "full and fair opportunity to litigate [EE's] issues in the Wisniewski Lawsuit." Tucci's Brief at 15. Tucci maintains that he did not fully defend himself in Wisniewski because he perceived his economic exposure therein "was limited to personal loans which Wisniewski had advanced, and which was approximately $10,000." Id. In asserting his lack of opportunity to litigate, he claims to have relied on the Wisniewski court's statement that all "remaining amounts due Wisniewski are recoverable upon dissolution and liquidation of [EE]." Tucci's Brief at 15 (citing R.R. at 392(a), Wisniewski Trial Court Opinion, 3/21/16, at 10). This claim is nonsensical considering that the Wisniewski court's opinion in which this statement appeared was filed six months after the conclusion of the Wisniewski hearing in October of 2015.

The trial court determined that Tucci indeed had a full and fair opportunity to litigate. Specifically, the court stated that the counterclaim asserted in Tucci's Motion to Amend Answer to Assert a Counterclaim could have, and should have been asserted in Wisniewski. Trial Court Opinion, 8/18/17, at 6. Tucci's counterclaim alleged that similar to Wisniewski, he also made numerous oral agreements with EE to provide personal loans to EE to pay its bills, in the approximate amount of $87,500. Motion to Amend Answer to Assert a Counterclaim, 2/3/17, at 2. The trial court opined that Tucci's "claim, that he loaned money to EE which inured to Wisniewski's benefit, is identical to Wisniewski's prior claim that she loaned money to EE which inured to Tucci's benefit." Trial Court Opinion, 8/18/17, at 6. The trial court also clarified that it would "not speculate as to why Tucci is only claiming his loans to EE and Wisniewski at this late date." Trial Court Opinion, 8/18/17, at 6. The trial court underscored that in Wisniewski, Tucci was represented by counsel, and he testified on his own behalf. Id. The trial court concluded, "It appears that [Tucci] regrets his original defense strategy and hopes to garner a second bite at the litigation apple." Id. We agree. The record supports the trial court's explanation.[3]

Looking to the additional factors necessary to support application of offensive collateral estoppel, Tucci also avers EE could have, and should

_____

[3] We further note that Tucci did not appeal the Wisniewski decision.

- 19 -

have, been a party to the Wisniewski lawsuit. Tucci's Brief at 16. Tucci asserts that: 1) nothing prevented EE from being a party to the prior suit, 2) there were no changes in the circumstances of EE's operation and membership between the filing of Wisniewski and the instant action, and 3) EE successfully initiated the present, subsequent suit. Id. at 17.

The trial court acknowledged that the question of whether EE could have joined Wisniewski is "problematic." Trial Court Opinion, 8/18/17, at 7. The court explained:

> Although EE claims that it could not have easily joined in the first litigation since it "is a small company with only two members, Wisniewski and Tucci," and "Tucci was certainly not going to agree to file a lawsuit against himself ([EE's] Brief in Support of Judgment on the Pleadings, p.9), EE has apparently managed to file suit in this case. More to the point, the first action was filed solely by Wisniewski because, "Wisniewski reasonably believed that Tucci owed her the money that she had advanced from her credit cards." (Id.) However, this [c]ourt concluded in the prior litigation that EE was the funnel through which Wisniewski's funds flowed to Tucci and as such, the amounts due Wisniewski must be sought through dissolution and liquidation of EE, under the mandates of Equestrian Endeavors' Operating Agreement (Wisniewski v. Tucci, Opinion and Order, 3/21/16, p. 9). Consequently, EE now brings suit. As our examining lens is one of fairness, we conclude that Tucci was not prejudiced by the fact that EE was not the original plaintiff to the first case.

Id. (emphasis in original). This explanation is consistent with the trial court's conclusion that EE met the general collateral estoppel factors, as discussed supra, and the broad discretion a trial court should be given in determining when offensive collateral estoppel should be applied. See Parklane Hosiery, 439 U.S. at 331.

Furthermore, at the beginning of the trial in Wisniewski, the court raised the issue of whether EE "was the proper party for the claim against" Tucci, N.T., 10/21/15, at 3–4, and suggested, "Well, you two can talk about it." Id. at 5. Tucci's counsel made no response. Again, at the end of the second day of trial, EE's absence arose again, this time in relation to dissolution of the LLC. N.T., 10/22/15, at 87. Again, Tucci was noncommittal. Id. at 88. In light of the entire record, we are inclined to agree with the trial court's resolution of this issue, as noted supra. Trial Court Opinion, 8/18/17, at 7.

In a brief, three-page argument, Tucci also challenges the second factor regarding offensive use of collateral estoppel, which questions whether the subsequent litigation was foreseeable and therefore, the defendant had an incentive to defend the first action vigorously. Tucci's Brief at 18; Parklane Hosiery, 439 U.S. at 330. Tucci asserts, in conclusory fashion, that statements from the Wisniewski court led him to "believe that he would have the opportunity in a different proceeding, through a different venue, and on another day to defend against [EE] claims." Tucci's Brief at 18.

In disposing of this argument, we rely on the trial court's reasoning. The trial court found that Tucci had the incentive to defend Wisniewski vigorously and even "anticipated this second action." Trial Court Opinion, 8/18/17, at 7. As evidence, the trial court underscored Tucci's comment in a

pretrial narrative that "Ms. Wisniewski lacks standing to bring claims on behalf of EE in her individual capacity, and EE is not even a part of this litigation." Id. These statements made by Tucci, before the Wisniewski trial had begun, strongly indicated to the trial court that a claim by EE was foreseeable. The court stated, "Thus, Tucci recognized he was facing a judgment of a significant sum against him by either Wisniewski or EE and defended accordingly." Id. We agree with this assessment.

Finally, Tucci baldly suggests he had "procedural and defense opportunities in the [EE] case which were not available in the [Wisniewski l]awsuit." Tucci's Brief at 19. He claims the trial court did not consider these unnamed opportunities. The trial court rejected this argument and stated:

> [T]here do not appear to be any procedural opportunities available to Tucci in this action that would not have been available to him in the prior case. Tucci's proffered counterclaim in this matter—that he loaned EE money just as Wisniewski had loaned EE money-could and should have been made in the prior case. Furthermore, this court recognized and fully addressed issues pertaining to EE's status as a limited liability corporation subject to an Operating Agreement and the dictates of the statute governing limited liability corporations at 15 Pa.C.S.A. Section 8901 et. Seq.[4] In the interest of judicial economy, there is no need to re–litigate the issue of Wisniewski's payments to Tucci through the EE accounts.

_____

4   Since the trial court heard this case, the statutes controlling limited liability companies have been repealed and replaced by the Pennsylvania Uniform Limited Liability Company Act of 2016, P.L. 1328, No. 170, 11/21/16.

Trial Court Opinion, 8/18/17, at 8.

Utilizing the minimal facts in the record before us, Tucci appears to conflate the Wisniewski court's holding that he owed $74,665 to EE for loans that Wisniewski funneled through the EE bank accounts, with the trial court's instruction that "the amounts due Wisniewski must be sought through dissolution and liquidation of EE." Trial Court Opinion, 8/18/17, at 8. While there may be procedural opportunities and other defenses that could be raised in dissolution proceedings, such proceedings have not yet occurred. As the instant trial court stated, "[T]he dissolution and liquidation of EE . . . is still necessary in order for Wisniewski to seek distribution of the judgment entered in this case, just as in the prior action." Id. The trial court held that there were no procedural opportunities that would have been available to Tucci in the instant action that were not available in the first action. Trial Court Opinion, 8/18/17, at 8. Tucci's proffered counterclaim in his denied Motion to Amend Answer to Assert Counterclaim was that he, individually, also had made oral agreements to loan EE approximately $87,500, which it had not repaid. Tucci's Motion to Amend Answer to Assert Counterclaim, 2/03/17, at 2. The trial court found that this counterclaim is a breach-of-contract claim premised on an oral agreement, as was the claim Wisniewski filed against Tucci in Wisniewski. Tucci provides no case law to support his contention that the procedural options or defenses identified would have applied in this civil case, let alone that they could produce a

different result. The trial court held that the counterclaim should have been brought in the prior action. In the instant case for a breach of contract, there were no procedural opportunities that could have produced a different result. Trial Court Opinion, 8/18/17, at 6–8. In light of the record, we concur with the trial court that Tucci had no procedural opportunities that were not available in the prior action.

In his second issue, Tucci asserts that his trial attorney's "incompetence and ineffective assistance deprived [Tucci] of crucial defense opportunities and denied [Tucci] of his due process rights." Tucci's Brief at 4, 19. Because Tucci did not raise this issue in his Pa.R.A.P. 1925(b) statement, it is waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); Nexus Real Estate, LLC v. Erickson, 174 A.3d 1, 4 (Pa. Super. 2017) (same).

Accordingly, we conclude that the trial court properly relied on the doctrine of collateral estoppel in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2018

- 24 -