J-A17006-23
J-A17007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| MARILYN VITCAVICH, EXECUTRIX OF THE ESTATE OF FRANK PINARDO, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 2645 EDA 2022 |
| | : | |
| OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST | : | |

Appeal from the Order Entered August 31, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2018-08537

| | | |
|---|---|---|
| KATHLEEN FOY, ADMINISTRATRIX OF THE ESTATE OF TERRANCE SARRA, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 2646 EDA 2022 |
| | : | |
| OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST DEAN M. TRAFELET, TRUSTEE OF OWENS CORNING/FIREBOARD ASBESTOS PERSONAL INJURY TRUST | : | |

Appeal from the Order Entered August 31, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2018-13625

| | | |
|---|---|---|
| FLORENCE FISK, EXECUTRIX OF THE ESTATE OF W. RUSSELL FISK, DECEASED AMBROSE LAURIE, CO ADMINISTRATRIX OF THE ESTATE OF TERENCE SARRA, DECEASED BARBARA HUBER, ADMINISTRATRIX | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

| | | |
|---|---|---|
| OF THE ESTATE OF ERNEST KAPPENBERGER, DECEASED CAMPANELL KARIN, EXECUTRIX OF THE ESTATE OF GUSTAV ANDERSON, DECEASED DEBORAH BURNS, ADMINISTRATRIX OF THE ESTATE OF EDWARD BURNS, DECEASED DOROTHY BABIOWSKI, EXECUTRIX OF THE ESTATE OF JOSEPH SERPENTE, DECEASED KATHLEEN FOX, CO ADMINISTRATRIX OF THE ESTATE OF TERENCE SARRA, DECEASED MARILYN VITCAVICH, ADMINISTRATRIX OF THE ESTATE OF FRANK PINARDO, DECEASED ROBERT J. MURPHY, ESQ., ADMINISTRATOR OF THE ESTATE OF BRUCE GESSLER, DECEASED ROBERT J. MURPHY, ESQ., ADMINISTRATOR OF THE ESTATE OF THOMAS COBBS, DECEASED | : : : : : : : : : : : : : : : : : : : : : | No. 2649 EDA 2022 |
| v. | : : : | |
| OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST CAMPBELL AND LEVINE, LLC D. LEANNE JACKSON TRUSTEE OF THE OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST HARRY HUGE, TRUSTEE OF THE OWENS CORNING/FIBREBOARD ASBESTOS PERSONAL INJURY TRUST THEODORE HUGE KELLEY JASONS MCGOWAN SPINELLI HANNA AND REBER, LLP OWENS CORNING/FIREBOARD ASBESTOS PERSONAL INJURY TRUST | : : : : : : : : : : : : : | |
| APPEAL OF: FLORENCE FISK | : | |

- 2 -

J-A17006-23
J-A17007-23

Appeal from the Order Entered August 31, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2018-14431

BEFORE: KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED AUGUST 22, 2023**

Florence Fisk (Fisk), executrix of the estate of W. Russell Fisk, deceased; Marilyn Vitcavich (Vitcavich), executrix of the estate of Frank Pinardo, deceased; and Kathleen Foy (Foy), executrix of the estate of Terrance Sarra, deceased, (collectively, Appellants)[1] appeal from the August 31, 2022 order of the Court of Common Pleas of Montgomery County (trial court) granting summary judgment in favor of the Owens Corning/Fibreboard (OC/FB) Asbestos Personal Injury Trust (the Trust); the Honorable Dean M. Trafelet, trustee; D. LeAnne Jackson, trustee; and Theodore Huge, personal representative of the estate of Harry Huge, trustee (collectively, Appellees). We affirm.

**I.**

We glean the following facts from the certified record. Fisk initiated the instant action in the trial court by filing her complaint on April 5, 2018, while

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We previously consolidated the appeals filed by Vitcavich and Foy. As the Fisk appeal presents the same legal issues, we have further consolidated the three cases *sua sponte*. **See** Pa. R.A.P. 513.

- 3 -

Vitcavich's initial complaint was filed on May 1, 2018, and Foy's was filed on May 22, 2018.[2, 3]  Each complaint pled claims for breach of trust/fiduciary duty, equitable relief and unjust enrichment.  The trial court consolidated the cases as they were proceeding against Appellees on the same legal theories.

Appellants each pled that their decedents had died from mesothelioma and/or pulmonary asbestosis after extended exposure to asbestos products manufactured by OC/FB.  They had previously filed civil suits for personal injury and wrongful death against OC/FB.[4]  In 2000, because of the numerous similar claims that had been filed against them, OC/FB initiated bankruptcy proceedings in federal court.  As a result of the bankruptcy proceedings, the Trust was created and funded with approximately $7.2 billion for the purposes of satisfying any asbestos-related personal injury and death claims against OC/FB.  The bankruptcy court issued a Channeling Injunction that directed all asbestos personal injury claims to the Trust and it assumed all of OC/FB's

---

[2] The operative complaint is the Fourth Amended Consolidated Complaint, filed July 22, 2022, which was filed after several rounds of preliminary objections by Appellees.  For simplicity, we refer to it as the complaint.

[3] The complaint was consolidated as to all Appellants and included additional plaintiffs who are not parties to this appeal.

[4] Fisk proceeded to a trial in which OC/FB was found liable and damages were awarded.  Fisk appealed and was granted a new trial on the issue of damages but OC/FB underwent bankruptcy before the new trial could take place. Vitcavich and Foy did not obtain judgments prior to the bankruptcy proceedings.

previous liabilities for these claims. The Trustees were appointed as fiduciaries to administer the Trust. The Trust established maximum claim amounts of $650,000 at a 40% rate from the OC subaccount and $450,000 at a 25% rate from the FB subaccount.

Under the Trust Distribution Procedures (TDP), claimants were required to first submit a proof of claim form to the Trust, which would then determine whether the claimant was entitled to damages and the liquidated value of the claim. The Trust would extend settlement offers to claimants where appropriate. Claimants who disputed the Trust's valuation of their claims were entitled to first proceed to mediation or non-binding arbitration, and then, if they rejected the arbitration award, to file suit "in the tort system" against the Trust. If a claimant rejected an arbitral award, the Trust would issue an authorization letter that would allow them to proceed with litigation. Fisk received authorization letters on June 4 and June 11, 2014; Vitcavich received letters on June 19 and November 24, 2014; and Foy on June 5, 2014. They commenced their civil suits on April 5, 2018, May 1, 2018, and May 22, 2018, respectively, and the cases were consolidated under the lead docket number of Fisk's complaint.

In the complaint, Appellants pled claims of breach of trust/fiduciary duty, arguing that they were beneficiaries of the Trust and entitled to the maximum award from each of the subaccounts. They contended that they had complied with the TDP and that the Appellees violated their fiduciary

duties by failing to timely pay Appellants' claims. For the claim for equitable relief, Appellants contended that as beneficiaries of the Trust, they were entitled to an accounting of the administration of the Trust as well as all records related to their claims. They further sought specific performance or an injunction ordering the Trust to pay the maximum award from each of the subaccounts and claimed that they were without adequate remedy at law. Finally, in support of the unjust enrichment claims, Appellants argued that they conferred a benefit on the Appellees by approving and accepting the reorganization plan in the bankruptcy proceedings, which absolved OC/FB of all liability for their personal injury and death claims. They contended that the Appellees benefitted from their approval of the plan and then wrongfully denied their claims. They sought compensatory and punitive damages, as well as attorney's fees, costs, interest and any other equitable relief.

Appellees[5] filed answers and new matter arguing that the Trust Agreement and TDP created a process to adjudicate all asbestos-related claims and that all litigation other than that specifically authorized by those documents was enjoined. They contended that the TDP did not authorize the type of claims that the Appellants had raised. Additionally, they pled that Appellants had not timely filed their claims, as the applicable statute of

---

[5] The Trustees collectively filed one answer and new matter and the Trust filed a separate one. The two pleadings raise the same arguments and defenses.

limitations for tort claims was two years following the issuance of the authorization letters. Appellants had initiated their suits approximately four years after receiving their letters.

Appellants moved to disqualify Appellees' counsel based on a conflict of interest in 2019.[6] They alleged that Appellees' counsel had violated Rules of Professional Conduct by representing the Appellants as individual creditors in the OC/FB bankruptcy proceedings and then representing the Trust in the instant proceedings. The trial court denied the motion, holding that no conflict of interest existed because the subject law firms had represented the Official Committee of Asbestos Claimants in the bankruptcy proceedings, which was a separate entity and not equivalent to representing any plaintiff in an individual capacity. *See* Order, 6/29/20, at 1-2 n.1.

Following discovery, Appellees filed a motion for summary judgment again arguing that Appellants' breach of fiduciary duty claims were barred by Pennsylvania's two-year statute of limitations. They further argued that the claims for equitable relief and unjust enrichment were enjoined by the Channeling Injunction and the doctrine of laches and that the Trustees were

---

[6] As we discuss in more detail *infra*, Part II.B, the exact nature of the disqualification motion and subsequent proceedings is difficult to discern from the record.

entitled to judgment as a matter of law based on Appellants' violation of the **Barton**[7] doctrine.

In their response, Appellants contended that summary judgment was inappropriate because Appellees had failed to provide necessary discovery and had based their arguments on revised versions of the Trust Agreement and TDP rather than those that were adopted at the time of the bankruptcy proceedings. They again contended that Appellees' counsel had a conflict of interest. They argued that the Trust was created to compensate claimants for all asbestos personal injury claims without limitation or laches and that they were beneficiaries of the Trust. They also argued that the Trust Agreement and TDP were not the sole remedy available to them and that they retained all other rights under law and equity to pursue their claims. Finally, they concluded that they retain a "right of payment" from the Trust and that the Appellees had manipulated the bankruptcy proceedings and TDP to avoid paying the fair value of their claims.

Following argument, the trial court found that the claims were time-barred and granted the motion for summary judgment. Appellants timely appealed and they and the trial court have complied with Pa. R.A.P. 1925.

---

[7] **Barton v. Barbour**, 104 U.S. 126 (1881) (holding that a plaintiff may not sue a bankruptcy trustee without first obtaining leave from the Bankruptcy Court that appointed the trustee).

**II.**

On appeal, Appellants contend that the trial court erred in granting Appellees' motion for summary judgment.[8] They argue that their claims were not time-barred, as no statute of limitations applies to claims brought by beneficiaries of a trust to enforce their right of payment from the trust under Pennsylvania law. They contend that the two-year statute of limitations for tort claims is inappropriate because they did not plead tort claims and were barred from doing so under the Channeling Injunction. In the alternative, they submit that their claims are governed by either a four- or six-year statute of limitations rather than the two-year statute of limitations. Fisk additionally argues that summary judgment was inappropriate because there were procedural defects in Appellees' motion and there were outstanding issues related to discovery and conflicts of interest that should have been addressed prior to the ruling on the motion.

[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Atcovitz***

---

[8] This Court's scope of review of a trial court's order granting summary judgment is plenary and we apply the same standard for summary judgment as does the trial court. [A]n appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion." ***Weaver v. Lancaster Newspapers, Inc.***, 926 A.2d 899, 902–03 (Pa. 2007) (internal citations omitted). A *de novo* standard of review applies as to whether there exists an issue of material fact, as this presents a pure question of law. ***Id.***

*v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221 (Pa. 2002); Pa. R.C.P. No. 1035.2. When considering a motion for summary judgment, the trial court must construe all facts of record and make all reasonable inferences in the light that most favors the non-moving party. *See Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007). Any question as to whether there exists a genuine issue of material fact must be resolved against the moving party. *Id.*

**A.**

We begin with Appellants' arguments related to the statute of limitations. "In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citation omitted); 42 Pa.C.S. § 5502(a) ("The time within which a matter must be commenced under this chapter shall be computed ... from the time the cause of action accrued. ..."). Once a plaintiff has discovered the injury, he has an affirmative duty to protect his own interests and pursue his remedy within the statute of limitations. *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 7 (Pa. Super. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007). "Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." *Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 831 (Pa. Super. 2005) (citation omitted).

A brief background on the formation of the Trust is necessary to our analysis. The Trust was created during the OC/FB bankruptcy reorganization

proceedings and assumed all liability for the companies' asbestos-related claims, allowing the companies to continue to operate in the wake of the thousands of claims it could not have satisfied on an individual basis. Under Section 524(g) of the Bankruptcy Code, an injunction was put into effect that channeled all asbestos personal injury and death claims to the Trust rather than to the companies, and the claims were resolved in accordance with the TDP. *See* 11 U.S.C. § 524(g)(1)(B), (2)(B). Such an injunction

> enjoin[s] entities from taking legal action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust described in paragraph (2)(B)(i), *except such legal actions as are expressly allowed by the injunction, the confirmation order, or the plan of reorganization*.

11 U.S.C. § 524(g)(1)(B) (emphasis added). The Third Circuit has explained what constitutes a "claim or demand" that must proceed against a trust in accordance with a Section 524(g) channeling injunction:

> That brings us to the question of what constitutes a "claim or demand." The Bankruptcy Code defines a "claim" using the "broadest available definition," *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 [] (2003) (internal quotation marks omitted), which provides that a "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured," 11 U.S.C. § 101(5)(A). Section 524(g) takes that definition and expands it even further, including within the sweep of the channeling injunction not only "claims" but also "demands." *Id.* § 524(g)(1)(B). A "demand" is then defined as a "demand for payment, present or future" that "was not a claim during the proceedings leading to the confirmation of a plan of reorganization" but "arises out of the same or similar conduct or events that gave rise to the claims addressed by the injunction."

- 11 -

> *Id.* § 524(g)(5).  A § 524(g) channeling injunction can therefore include any right to or demand for payment that arises from the debtor's underlying asbestos liabilities, regardless of when that right or demand arises, whether it was raised during the bankruptcy proceeding or is contingent on a future event.

*In re W.R. Grace & Co.*, 729 F.3d 311, 321 (3d Cir. 2013).[9]

The issues on appeal depend on the specific language of the Trust Agreement, TDP and Alternative Dispute Resolution Procedures (ADRP).[10]  The Trust Agreement begins by defining the purpose of the Trust as to assume the asbestos liabilities of OC/FB and to resolve all Trust claims "fairly, equitably and reasonably in light of the limited assets available to satisfy such claims."  Trust Agreement, § 1.2, R.R. 926a.  While the Trust and Trustees assumed the asbestos liabilities,

> Except as otherwise provided in this PI Trust Agreement and the TDP, the *PI Trust shall have all defenses, cross-claims, offsets, and recoupments*, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that OC and Reorganized OC have or would have had under

---

[9] This Court has provided that:

> absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved.  When considering a given issue, however, we prefer Third Circuit decisions to those of other federal circuits, to discourage litigants from 'crossing the street' to obtain a different result in federal court than they would in Pennsylvania court.

*Graziani v. Randolph*, 856 A.2d 1212, 1218 (Pa. Super. 2004) (quoting *Werner v. Plater–Zyberk*, 799 A.2d 776, 782 (Pa. Super. 2002)).

[10] For ease of reference, we cite to the documents in the reproduced record.

applicable law. *Regardless of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose, except as otherwise provided in Section 5.1(a)(2) of the TDP.*[11]

Trust Agreement, § 1.4(b) (emphasis added), R.R. 927a. Additionally, the Trust Agreement includes a choice of law provision specifying that it must be governed by and construed in accordance with Delaware law. Trust Agreement, § 7.10, R.R. 969a.

The TDPs govern the processing of all asbestos personal injury claims submitted to the Trust. "Except as may otherwise be provided [in the TDP], nothing in [the] TDP shall be deemed to create a substantive right for any claimant." TDP § 1.2, R.R. 199a-200a. Accordingly, claimants are limited in their rights to pursue relief for asbestos personal injury claims by the express language of the TDP and all claims against the Trust must be presented in the form required by the TDP. The TDP outlines a process by which claims are first subject to individual or expedited review for an initial settlement offer, after which the claimant may proceed to mediation and then non-binding arbitration if he or she is dissatisfied with the offer.

---

[11] Section 5.1(a)(2) sets forth statutes of limitations and repose for the initial filing of a claim with the Trust, varying depending on whether a claimant asserted his or her claim in tort before or after OC/FB filed for bankruptcy. *See* TDP § 5.1(a)(2), R.R. 221a. There is no dispute here that Appellants filed suit against OC/FB prior to the bankruptcy proceedings.

As relevant here, a claimant who rejects an award from non-binding arbitration may then proceed to litigate the claim in "the tort system." TDP § 2.2, R.R. 203a; TDP § 5.11, R.R. 254a ("Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to institute a lawsuit *in the tort system* against the PI Trust pursuant to Section 7.6 below.") (emphasis added). Specifically:

> If the holder of a disputed claim disagrees with the PI Trust's determination regarding *the Disease Level of the claim, the claimant's exposure or medical history, the validity of the claim under the provisions of this TDP or the liquidated value of the claim*, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.10 above, the holder may file a lawsuit in the Claimant's Jurisdiction as defined in Section 5.3(b)(2)[12] above. Any such lawsuit must be filed by the claimant in his or her own right and name as not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. *All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by [OC/FB]) shall be available to both sides at trial*; however, the PI Trust may waive any defense and/or concede any issue of fact or law. . . .

TDP § 7.6, R.R. 261a (emphasis added). The TDP contains a choice of law provision stating that the law governing any litigation in the tort system shall be the law of the Claimant's Jurisdiction. TDP § 8.3, R.R. 264a.

Finally, the ADRP sets forth the process if a party to non-binding arbitration rejects the arbitral award. Upon rejection of the award, a claimant

---

[12] Section 5.3(b)(2) defines "Claimant's Jurisdiction" as "the jurisdiction in which the claim was filed (if at all) against [OC/FB] in the tort system prior to the Petition Date." TDP § 5.3(b)(2), R.R. 237a.

may proceed to binding arbitration or litigation by notifying the Trust of his or her decision. ADRP IV.Q.2, R.R. 282a. Upon receipt of timely notification that the claimant wishes to proceed to litigation, the Trust must send the Claimant an authorization letter to do so. *Id.* Here, the record reveals that Appellants all received authorization letters after rejecting arbitral awards that contained the following language:

> [P]ursuant to Section IV.Q of the [ADRP], the Trust grants Claimant authorization to commence litigation against the Trust pursuant to Section 7.6 of the TDP. Such litigation shall be limited to determination of the liquidated value of the Claimant's Trust Claim in accordance with the TDP.
>
> The Trust, in issuing this authorization to commence litigation, does not waive, and hereby expressly preserves, any and all claims and defenses available to the Trust pursuant to the Plan.

Authorization Letters, R.R. 289a, 291a, 305a, 307a & 310a.

Based on these provisions, we agree with the trial court that Appellants were only expressly authorized under the TDP to raise tort claims against the Trust and were bound by Pennsylvania's statute of limitations in pursuing those claims. Under the Channeling Injunction, Appellants were barred from litigating any claims against the Trust until they had complied with the TDPs by undergoing individual review of the claims, arbitrating the claim and receiving the authorization letter from the Trust allowing them to commence suit in the tort system. Accordingly, for the purposes of the statute of limitations, their causes of action accrued when they received the authorization letters, as that was the date "when [they] could have first

maintained the action to a successful conclusion." *Fine*, *supra*. Prior to that date, any claim in the trial court was barred by the Channeling Injunction. Thus, we agree with the trial court's determination that the limitations period commenced when Appellants received their authorization letters.

Further, it is beyond cavil that tort claims in Pennsylvania are subject to a two-year statute of limitations, as are claims for breach of fiduciary duty. 42 Pa.C.S. § 5524(7); *see also Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265 (Pa. Super. 2016). As described *supra*, Appellants received their respective authorization letters in 2014 and did not file suit in the trial court until 2018. Thus, claims lying in tort or breach of fiduciary duty were patently untimely.

In an attempt to circumvent these timeliness concerns, Appellants characterize their claims as equitable in nature and argue that no statute of limitations applies. They ascribe no significance to the TDP's use of the phrase "in the *tort* system" and argue that any tort claims were forever enjoined by the Channeling Injunction, even when a claimant complies with the TDP. TDP § 7.6, R.R. 261a (emphasis added). Relying on Pennsylvania case law related to beneficiaries of estates, they argue that they held a "right of payment" as beneficiaries and owners of the Trust's *corpus* that entitled them to payment without regard to any statute of limitations. This argument is belied by the language of the Trust Agreement and TDP.

The dual purpose of a Section 524(g) bankruptcy trust "is to give 'full consideration' to the interests of future claimants by ensuring their claims would be compensated comparably to present claims, while simultaneously enabling corporations saddled with asbestos liability to obtain the 'fresh start' promised by bankruptcy." *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 359 (3d Cir. 2012) (quoting H.R. Rep. No. 103-835, at 46-48). To that end, claimants are expressly limited in the relief they may pursue for asbestos-related personal injury or death claims. While Appellants may submit a claim for adjudication by the Trust in accordance with the TDP, including through non-binding arbitration and subsequent litigation "in the tort system," the TDP does not "create a substantive right for any claimant" beyond what is expressly authorized in that document. TDP § 7.6, R.R. 261a; TDP § 1.2, R.R. 199a-200a. By limiting the types of claims that can be litigated against the Trust, the Channeling Injunction, Trust Agreement and TDP balance the interests of thousands of claimants with the limited funds available to compensate them and OC/FB's interest in continuing their business.

Moreover, Appellants' argument does not account for Section 1.4(b) of the Trust Agreement, which requires all claimants to comply with otherwise applicable statutes of limitation and reserves all defenses to the Trust that could have been asserted by OC/FB. Section 7.6 of the TDP similarly reiterates that all defenses are reserved to the Trust when a claimant elects to proceed to litigation in the tort system. Finally, the Bankruptcy Code does not preclude

all tort litigation under these circumstances, as even under a general bar to litigation a channeling injunction may still "expressly allow[]" for specific legal actions. 11 U.S.C. § 524(g)(1)(B). Here, those legal actions include tort claims following rejection of an arbitral award.

Appellants argue that equitable claims against the Trust and Trustees are not governed by the TDP or Trust Agreement. However, the broad definition of "claim or demand" under Section 524(g) of the Bankruptcy Code undercuts this argument. **W.R. Grace & Co.**, **supra**. The Channeling Injunction applies to "any right to or demand for payment that arises from the debtor's underlying asbestos liabilities, regardless of when that right or demand arises," including any claim for equitable relief or unjust enrichment asserted by Appellants. **Id.** The foregoing provisions of the Trust Agreement, Channeling Injunction and TDP expressly limit a claimant's potential avenues to relief to tort claims in litigation, precluding claimants from pursuing equitable claims against the Trust in litigation.[13] While Appellants attempt to argue that the language "in the tort system" should be read as a generalized authorization to pursue relief through litigation, this reading would require us

_____

[13] Additionally, we agree with the trial court and Appellees that Appellants are precluded from seeking remedy in equity when they had an adequate remedy at law, in the form of monetary damages, available to them. Trial Court Opinion, 12/12/22 at 8 (citing **Stuyvesant Ins. Co. v. Keystone Ins. Agency, Inc.**, 218 A.2d 294, 296 (Pa. 1996); Appellees' Brief at 34-35 (Fisk Appeal); Appellees' Brief at 28-29 (Vitcavich/Foy Appeal).

to disregard the plain meaning of "the tort system." We cannot rewrite the Trust Agreement and TDP to authorize all possible litigation "in the court system" when it does not do so.[14]

Finally, Appellants' reliance on **In re Schulz Estate**, 98 A.2d 176 (Pa. 1953) and **Trust Under Will of Ashton**, 260 A.3d 81 (Pa. 2021), for the proposition that they have a right of payment from the Trust that is not subject to laches or limitation is unavailing. Appellants are claimants who are entitled to payment from the Trust only to the extent that they comply with the TDP for proving, valuing and liquidating their claims. By its own terms, the TDP does not create any substantive right for any claimant. TDP § 1.2, R.R. 199a. Case law related to vested beneficiaries who have an already-established interest in a trust's *corpus* has no bearing on whether any claimants to the Trust here have sufficiently established their claims. Indeed, a claimant who fails to establish exposure or medical criteria required for recovery under the TDP would not be entitled to recover as a beneficiary of the Trust's *corpus*. Based on the foregoing, the trial court did not err in granting Appellees' motion for summary judgment based on the statute of limitations.

---

[14] Because we have determined that the TDP only allows tort claims in litigation, we reject Appellants' argument that the four- or six-year statutes of limitation for other types of claims could apply here.

**B.**

Next, Fisk argues that the trial court should not have reached the merits of the summary judgment motion based on procedural defects.[15]  She points out that Appellees did not append an affidavit in support of the motion and contends that summary judgment was premature because discovery was incomplete.  She does not specifically identify any discovery materials that remained outstanding which would have aided in disposition of the timeliness issue.  Finally, she argues that the trial court erred in denying her motion to disqualify Appellees' counsel based on a substantial conflict of interest.[16]  These claims are meritless.

---

[15] Vitcavich and Foy raised similar claims of error in their concise statements pursuant to Pa. R.A.P. 1925(b), but did not include them in their brief on appeal.  Accordingly, they have abandoned those arguments.  ***In re K.K.***, 957 A.2d 298, 303 (Pa. Super. 2008).

[16] Appellees contend that the conflict-of-interest issue is waived because Fisk did not file an immediate collateral appeal under Pa. R.A.P. 313 of the trial court's denial of that motion.  Appellees' Brief at 31-32 (citing ***Rudalavage v. PPL Elec. Utilities Corp.***, 268 A.3d 470, 478 (Pa. Super. 2022)).  "There is no rule, however, that a collateral order must be appealed within thirty days after its entry; Rule 313(a) only provides that an appeal 'may' be taken from a collateral order."  ***Cabot Oil & Gas Corp. v. Speer***, 241 A.3d 1191, 1198 (Pa. Super. 2020).  As Fisk points out, under Pennsylvania's merger rule, "a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment."  ***McNeil v. Jordan***, 894 A.2d 1260, 1266 (Pa. 2006) (emphasis and citation omitted).  Accordingly, Fisk is not precluded from challenging the trial court's order on her disqualification motion on appeal from the final order disposing of her claims.

We begin with Fisk's challenge to the lack of affidavit supporting Appellees' motion. Summary judgment is appropriate, *inter alia*, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." Pa. R. Civ. P. 1035.2(1). For the purposes of summary judgment, the record includes pleadings, depositions, answers to interrogatories, admissions, affidavits and expert reports. Pa. R. Civ. P. 1035.1, 1035.4.

Neither the lack of affidavit in support of the motion nor any outstanding discovery impeded the trial court's ability to decide the summary judgment motion in this case. As the trial court observed during the oral argument on the motion, the case management order had imposed a discovery deadline of June 11, 2020, and neither Fisk not the other plaintiffs sought an extension of the deadline or moved for additional discovery after that time. N.T. 8/3/22, at 7-9. Additionally, Fisk conceded that the relevant dates established by documentary evidence, the dates of the authorization letters and the filing of the complaints, were correct. *Id.* at 11-12. Those dates were controlling for the question before the trial court on summary judgment: whether Fisk had filed her complaint within the statute of limitations. As Fisk has not identified any discovery that she was denied and which would have been relevant to timeliness, and no affidavit from any of the Appellees would have affected her own concession as to the relevant dates, the trial court did not err in

considering the merits of the summary judgment motion without requiring further discovery or affidavit.

Finally, Fisk asserts that the trial court erred by declining to disqualify Appellees' counsel from their representation in this matter.[17]  Fisk did not include the motion for disqualification in the reproduced record, identify its location in the certified record or even cite the motion in her argument, which has hampered our review of this issue.  *See* Pa. R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears."); *Commonwealth v. Koehler*, 914 A.2d 427, 438 (Pa. Super. 2006) ("[I]t is not this Court's duty to become an advocate for an appellant and comb through the record to assure the absence of trial court error.").  The certified record in this matter spans over 6,000 pages and is not easily indexed into its constituent parts.  While Fisk

---

[17]

> When reviewing a trial court's order on disqualification of counsel, we employ a plenary standard of review.  Courts may disqualify attorneys for violating ethical rules.  On the other hand, courts should not lightly interfere with the right to counsel of one's choice.  Thus, disqualification is appropriate only when both another remedy for the violation is not available and it is essential to ensure that the party seeking disqualification receives the fair trial that due process requires.

*Rudalavage*, *supra*, at 478 (citation omitted).

- 22 -

baldly asserts in her brief that certain of Appellees' counsel had represented her and other plaintiffs as creditors in the bankruptcy proceedings, she cites no evidence of record to establish that such a conflict of interest actually existed.[18] Because she has not sufficiently developed this claim and we are unable to review the merits on the record before us, this issue is waived.

Order affirmed.

_____

[18] As explained *supra*, the trial court found that Appellees' counsel had represented the Official Committee of Asbestos Claimants in the bankruptcy proceedings. **See** Order, 6/29/20, at 1-2 n.1; R.R. 696a-97a. The Appellants were granted leave to conduct depositions of up to three plaintiffs in the lower court to establish a factual basis for disqualification. Rather than conducting those depositions, Appellants submitted a deposition of Foy taken in a related case. The trial court found that the deposition did not establish that Foy had been personally represented by Appellees' counsel, but rather that she may have relied on recommendations they made in their capacity as Asbestos Committee counsel when she voted to approve the creation of the Trust. **Id.** at 2 n.1. Thus, while the trial court acknowledged that disqualification "is appropriate 'where the attorney has represented the opposing party in the past and may use confidential information gained in the course of that employment,'" it concluded that "[t]he Law Firms' prior representation of the Asbestos Committee in the bankruptcy case is not equivalent to a representation of the individual Plaintiffs." **Id.** (quoting **Vertical Res., Inc. v. Bramlett**, 837 A.2d 1193, 1201 (Pa. Super. 2003)). Further, "Bankruptcy Courts and Federal Appellate Courts have consistently held that counsel to a bankruptcy creditors committee represents the committee itself, not the individual creditors." **Id.** (collecting cases). We discern no error in this reasoning.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2023